REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0886

SEPTEMBER TERM, 2014

---

STATE OF MARYLAND

v.

RYAN CHRISTOPHER HALLIHAN

---

Eyler, Deborah S.,
Reed,
Salmon, James P.
    (Retired, Specially Assigned),

        JJ.

---

Opinion by Salmon, J.

---

Filed: August 28, 2015

Appellee, Ryan Christopher Hallihan ("Hallihan") was charged, in a criminal information filed in Worcester County, with nine crimes. The four that are here of interest are: First Degree Burglary (Count I); First Degree Assault against Dennis Joseph Smith (Count IV); First Degree Assault against Stacy Marie Smith (Count V); and Reckless Endangerment (Count VIII).

Hallihan, by counsel, filed a motion to dismiss the aforementioned four counts. A hearing to consider the motion was held in the Circuit Court for Worcester County, Maryland. The matter was taken under advisement and, on May 28, 2014, the court dismissed Counts I, IV, V, and VIII. Appellant, the State of Maryland, entered the remaining five Counts *nolle prosequi*. The State then filed this appeal in which three major questions are presented, *viz*.:

> (1) Is Appellee correct when he argues that the State has no right to file an appeal from the dismissal of certain counts of a criminal information under the circumstances of this case?
>
> (2) Did the circuit court err in granting the motion to dismiss filed by Hallihan?
>
> (3) Did the State preserve for review its objection to the dismissal of Count VIII?

We shall answer the first question in the negative and the second and third questions in the affirmative. The judgment entered in favor of Hallihan as to Counts I, IV, V and VIII shall be reversed and the case remanded to the Circuit Court for Worcester County for trial as to those counts.

**I**.

The criminal information filed against Hallihan in this case reads, in material part, as follows:

## COUNT I

The aforesaid, the State's Attorney for Worcester County, charges and alleges that the said RYAN CHRISTOPHER HALLIHAN, late of said County, on or about September 29, 2013, in Worcester County, Maryland, did break and enter the dwelling house of Dennis Joseph Smith, located at 5901 Atlantic Avenue, Unit 211, Ocean City, Maryland, with the intent to commit a crime of violence, in violation of CR 6-202 of the Annotated Code of Maryland; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.
CR 6-202
FELONY: 20 YEARS
CJIS Code: 2 3000 BURGLARY–FIRST DEGREE

## COUNT IV

The aforesaid, the State's Attorney of Worcester County, charges and alleges that the said RYAN CHRISTOPHER HALLIHAN, late of said County, on or about September 29, 2013, in Worcester County, Maryland, did attempt to assault Dennis Joseph Smith in the first degree in violation of CR 3-202; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.
CR 3-202
FELONY: 25 YEARS (CRIME OF VIOLENCE)[1]
CJIS Code: 1 1420 ASSAULT–FIRST DEGREE

## COUNT V

---

[1]The crime of first degree assault is committed if a person "intentionally cause[s] or attempt[s] to cause," serious physical injury to another. Md. Code (2012 Repl. Vol.) Criminal Law Article ("Crim. Law") section 3-202. First degree assault is a crime of violence as that term is defined in Crim. Law section 14-101(a)(19).

The aforesaid, the State's Attorney of Worcester County, charges and alleges that the said RYAN CHRISTOPHER HALLIHAN, late of said County, on or about September 29, 2013, in Worcester County, Maryland, did attempt to assault Stacy Marie Smith in the first degree in violation of CR 3-202; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.
CR 3-202
FELONY: 25 YEARS (CRIME OF VIOLENCE)
CJIS Code: 1 1420   ASSAULT–FIRST DEGREE

## COUNT VIII

The aforesaid, the State's Attorney of Worcester County, charges and alleges that the said RYAN CHRISTOPHER HALLIHAN, late of said County, on or about September 29, 2013, in Worcester County, Maryland, did recklessly engage in conduct, to wit: wrestling, fighting, and attempting a choke-hold, that created a substantial risk of death or serious physical injury to Dennis Joseph Smith; contrary to the form of the Act of Assembly in such case made and provided, and against the peace, government and dignity of the State.
CR 3-204(a)(1)
MISDEMEANOR: 5 YEARS/$5,000.00
CJIS Code: 1 1425    RECKLESS ENDANGERMENT

Hallihan's counsel filed a demand for particulars, which the State answered on March 18, 2014. With respect to Count I, which charged first degree burglary, the State alleged that Hallihan broke into a condominium apartment where Dennis Joseph Smith and his wife, Stacy Smith, along with their seven-year-old child, resided. According to the bill of particulars, while Hallihan was in the Smiths' apartment, he "committed two first degree assaults and two second degree assaults" against the adult occupants of the apartment by "actually putting Dennis Smith in a sleeper hold and by threatening to do the same to Stacy Smith and subsequently reaching for and striking Stacy Smith's forehead."

-3-

In regard to Count IV, which alleged first degree assault against Dennis Smith, the bill of particulars alleged that Hallihan intended to cause serious physical injury or death to Dennis Smith and that serious physical injury or death "can be caused by placing someone in a sleeper hold." It was further alleged that Hallihan put his arms around the victim's head "intending to get a lock around" Dennis Smith's neck. Moreover, according to the bill of particulars, Hallihan intended to cause serious physical injury or death to Dennis Smith by wrestling with him and causing injury to his ear.

The bill of particulars, in regard to Count V, alleged that although Hallihan did not succeed in causing serious physical injury or death to Stacy Smith, he intended to do so as evidenced by the fact that he yelled at her and said that "he was going to put her in a sleeper hold." Also, in the bill of particulars, it was alleged that the attempt to put Ms. Smith in a sleeper hold caused her to suffer "actual injury" to her forehead. Additionally, the State alleged that "[a] sleeper hold presents a substantial risk of serious physical injury or death by cutting off the flow of blood to the head and oxygen to the lungs, which in turn can incapacitate the victim." Lastly, in regard to Count VIII, reckless endangerment, the following was alleged:

> A sleeper hold is an offensive or defensive movement often used by martial artists, law enforcement, military, and others to incapacitate or kill an opponent. Engaging in or attempting to place someone into a sleeper hold is an intentional act that by its very nature creates a substantial risk of serious physical injury or death because it cuts off the flow of blood to the head and flow of oxygen to the lungs. Someone placed in a sleeper hold usually loses consciousness within a very short period and death can result if blood flow and oxygen fail to resume.

-4-

The State, on March 19, 2014, named two expert witnesses whom it intended to call at trial. The experts' names were Sgt. James A. Brady and Sgt. Dennis Eade, both of the Ocean City Police Department. According to the notice, the witnesses were of the opinion that "the chokeholds and sleeper holds in particular, can cause serious physical injury or death." It was further proffered that both witnesses were prepared to "describe various chokeholds, including the sleeper hold, and explain the application of such a hold and the hazards associated with performing such a hold on someone."

On March 24, 2014, Hallihan filed a motion to dismiss Counts I, IV, V, and VIII because those counts, purportedly, failed "to state an offense." Movant pointed out, preliminarily, that in Count I (First Degree Burglary) the State did not allege that Hallihan broke into the Smiths' apartment with the intent to steal anything. Instead, it was alleged that Hallihan broke into the apartment with the intent to commit a crime of violence. According to Hallihan's motion, even if the facts set forth in the criminal information in regard to Count I were true, no crime was alleged because the facts set forth were insufficient to allege that Hallihan intended to commit a crime of violence as defined in Md. Code (2012 Repl. Vol.), Criminal Law Article ("Crim. Law") section 14-101.

In regard to Counts IV and V of the criminal information, Hallihan asserted that those counts failed to allege facts sufficient to support a finding that he [Hallihan] intentionally caused or attempted to cause serious bodily harm to either Mr. or Mrs. Smith.

As to Count VIII (Reckless Endangerment), appellant contended that the State had

failed to set forth a "legally sufficient factual basis" for showing that the defendant's conduct "created a substantial risk of serious bodily harm."

The State filed a timely opposition to Hallihan's motion to dismiss and the matter was heard on May 6, 2014. At the hearing, no evidence was presented by either side. Counsel simply argued.

A significant part of the hearing was taken up by argument concerning the risk to safety to a person who is placed in a "sleeper hold." Counsel for Hallihan said, in effect, that the sleeper hold did not subject the victim to the risk of death or serious bodily harm, even though the bill of particulars asserted otherwise. In this regard, counsel for Hallihan and the motions judge had the following colloquy:

> DEFENSE COUNSEL: If you're going to prove that the Defendant attempted to cause serious bodily harm by way of the sleeper hold, you must show that the natural consequences of that sleeper hold are fatal.

> THE COURT: So isn't that an element of proof?

> DEFENSE COUNSEL: That would be an element of proof, Your Honor. However, the sleeper holds, which are most commonly known in professional wrestling settings, UFC, martial arts and the police department - - some police departments still employ it across the country - - are done - - are consistently used. In professional wrestling every day a sleep hold is used.[2]
> If the State wants to show that Ryan attempted to create a substantial risk of death, they must at least show that he took a substantial risk, factually that he took a substantial risk, towards creating that risk of death. It is not a

---

[2]It may be true that a sleeper hold is <u>pretended</u> to be used everyday in professional wrestling, but much of what goes on in professional wrestling is make-believe.

natural consequence of the sleeper hold, in and of itself. Otherwise, it wouldn't be used every day.

The substantial step forward that they have to allege is that there was some sort of choking, gasping for air, something that would suggest he created a risk of death and took a substantial step towards it. There are no facts presented that there was any substantial step taken to create that risk.

And according to the State's version, every headlock on the boardwalk would become an attempted first degree assault with - - if they could bring in - -

THE COURT: Well, I think - - I think that's - - could be the State's position, but we, again, get back to the statement I made before, that's - - they have a steep climb to generate proof to this extent, but, again, it's an element of proof.

DEFENSE COUNSEL: Your Honor, I would suggest that the legal sufficiency of the evidence, that they had to provide facts that show that there was a substantial step towards it, and that by him wrapping his arms around the head of the victim, there is no substantial step towards an attempt to create a - - a risk of death.

As mentioned, the motions judge took the matter under advisement. By an order dated May 28, 2014, the motions judge dismissed Counts I, IV, V, and VIII of the criminal information. The order indicated that the motion was granted based on Hallihan's written motion to dismiss, the State's reply to that motion and the argument of counsel at the hearing. There was no other explanation for the court's ruling.

## II.
## DID THE STATE HAVE THE RIGHT TO APPEAL THE DISMISSAL ORDER?

Hallihan argues:

> The pretrial dismissal of Counts One, Four, Five and Eight was substantively a ruling on the sufficiency of the evidence, and whether that ruling was error or not, Maryland common law double jeopardy law bars the State's appeal.

-7-

To begin, we disagree with Hallihan's assertion that the trial court substantively ruled on the sufficiency of the evidence. There simply was no evidence to evaluate. We also disagree with Hallihan's implied assertion that he was, at any time, "in jeopardy" for double jeopardy purposes.

In support of his argument, that the State has no right to appeal because any re-trial would violate his right not to be tried for a crime of which he had been acquitted, Hallihan relies, almost entirely, on *State v. Taylor*, 371 Md. 617 (2002). Because of that reliance, it is useful to set forth in detail the facts evaluated and considered in *Taylor*.

*Taylor* was a consolidated appeal involving the dismissal of two separate charging documents. The first case involved Donald Taylor, Jr. and the second involved a charge of conspiracy lodged against Larry Bledsoe, George Kopp, and Joseph Johnson. *Id*. at 621, 624.

### A. *Taylor v. State*

Donald Taylor was charged in a criminal information with three counts of violating the Maryland child pornography statute, one count of attempted third degree sex offense, and one count of attempted second degree assault. *Id*. at 624-25. Taylor filed a motion to dismiss the charges. *Id*. at 626. For purposes of the motions hearing, Taylor entered into evidence, without objection, as Defendant's Exhibit 1, a photocopy of a "confidential" memorandum prepared by a Maryland State Trooper. *Id*. That memorandum was relied on by the State to prepare the criminal information filed against Taylor. Taylor and the State

proceeded at the motions hearing based on an agreement that State's Exhibit 1 "was an accurate and complete summary of the facts underlying the charges in the information." *Id*. The memorandum said that appellant was a 43-year-old male living in New Jersey who was using the internet to solicit children to have sex with him. *Id*. A female State Trooper, identifying herself as "Stephanie," commenced an e-mail exchange with Taylor. During the exchange, Stephanie pretended to be a 15-year-old girl. *Id*. According to the memorandum, Taylor and Stephanie arranged to meet in Frederick County, Maryland on October 29, 1999 so that they could go somewhere to have sex. *Id*. at 627. When Taylor showed up at the pre-arranged spot, he was met by a female State Trooper who was dressed like a 15-year-old girl, with a ponytail, wearing baggy clothes, and carrying a backpack. Taylor was then arrested.

Based on the facts contained in Exhibit 1, Taylor argued that venue was improper in Frederick County as to three child pornography charges because the alleged offenses, which were based on computer transmissions, did not occur in that county. 371 Md. at 627. He also contended that his actions, as alleged in the first three counts, did not constitute statutory offenses. *Id*. In addition, Taylor maintained that the circuit court did not have subject matter jurisdiction because the undercover State Trooper was not "actually 15 years old[.]" *Id*. at 628. The motions judge granted Taylor's motion to dismiss on the grounds that the "facts showed that the e-mail conversations did not violate the statute." *Id*. The motions judge dismissed the attempt charges on two other grounds. The first ground was

that although it was charged that the victim of a crime involved a minor, the facts showed that an adult State Trooper was involved rather than a minor and therefore it was "legally impossible for [Taylor] to commit the offenses charged." *Id.* Also, according to the motions judge, Taylor's conduct "was mere preparation and did not constitute a substantial step towards the commission of the crime." *Id.*

The State noted a timely appeal to this Court, but the Court of Appeals granted *certiorari* on its own initiative to consider the issue of whether the circuit court erred in granting the motion to dismiss the criminal information. *See State v. Taylor*, 362 Md. 360 (2001). But, after oral argument, the Court of Appeals ordered the parties to supplement their briefs and argue the following additional questions:

> If, in purporting to rule favorably on a motion to dismiss, the court goes beyond the mere allegations contained in the charging document (or as supplemented by any bill of particulars) and considers evidence or facts not specified in the charging document:
>
> > 1. (a) does the ruling become one on the evidence in the context of federal or state double jeopardy principles, and (b) did that occur in this case?
> >
> > 2. does the State have a right of appeal from that ruling in light of federal or state double jeopardy principles or Maryland Code (1974, 1998 Repl. Vol., 2001 Supp.), § 12-302(c)(1) of the Courts and Judicial Proceedings Article?

371 Md. at 629.

## B. *Bledsoe v. State*

In the companion case considered by the *Taylor* Court, three petitioners were charged

with conspiracy to violate a Prince George's County ordinance making it illegal to appear fully nude in a public place. *Id*. at 621. The charges were set forth in a criminal information filed against the petitioners in the District Court of Maryland, sitting in Prince George's County. The petitioners filed a pre-trial pleading entitled "Motion to Dismiss, or in the Alternative for Judgment of Acquittal." *Id*. When that motion was argued, the petitioners and the State stipulated as follows:

> (a) at the time and place of the alleged criminal activity, nude dancing took place in an enclosed building located in an industrial park; (b) the Showcase [Theater] was a for-profit business that charged an admissions fee; (c) the Showcase did not admit anyone under the age of 18; and (d) the building had external doors and inside was a stage, lighting, music, and women initially clothed in costumes who eventually achieved a state of undress during their performances.

*Id*. at 622 (footnotes omitted).

After the hearing, the judge took the matter under advisement, but before the court could rule, the State submitted a memorandum in opposition to the motion with additional evidence attached. *Id*. at 622-23. The additional evidence was an advertisement flyer describing the performance at the Showcase Theater as "an adult entertainment theater," offering "exotic 'all nude' female dancers." *Id*. at 623 n.4. The District Court judge issued an oral ruling, accompanied by a written opinion, granting the petitioners' motion and dismissing the criminal information. *Id*. at 623. The judge concluded that, based on the totality "of the facts before him," the Showcase Theater was not a "public place" under the applicable statute. *Id*. The judge also opined that "nude dancing is considered

-11-

constitutionally protected expression pursuant to the first amendment of the United States Constitution and as applied to the States through the 14th Amendment." *Id*.

The State noted an appeal to the Circuit Court for Prince George's County. Petitioners argued, *inter alia*, that the circuit court lacked jurisdiction to hear the appeal because the judge's ruling amounted to an acquittal and as a consequence, the appeal was barred by Maryland common law double jeopardy principles as well as double jeopardy principles set forth in the federal constitution. *Id*. at 623. The circuit court judge concluded that the District Court erred in dismissing the charges against petitioners and, accordingly, remanded the matter to the District Court for trial. *Id*. at 624. The Court of Appeals granted *certiorari* to consider "whether double jeopardy principles were triggered by the previous dismissal of the criminal action by the District Court, thus requiring reversal of the Circuit Court's judgment[.]" *Id*.

### C. Analysis

The *Taylor* Court commenced its discussion by providing a comprehensive review of double jeopardy principles under Maryland common law. *Id*. at 629-635. At common law, a person could not be retried after an acquittal (*autrefois acquit*), after a conviction (*autrefois convict*), or after a pardon. *Id*. at 630. The Court ruled that neither the three petitioners involved in the Prince George's County case nor Taylor, could be retried. The Court stated:

> The function of a motion for judgment of acquittal is clearly distinguishable from the function of a motion to dismiss. While a motion to

dismiss is intended to evaluate the sufficiency of the charges, the grant of an acquittal has the same effects and consequences as the return of a verdict of "not guilty" by the trier of fact. The basic premise of the common law plea of *autrefois acquit* is that

> no man is to be brought into jeopardy of his life more than once for the same offence. And hence it is allowed as a consequence, that when a man is once fairly found not guilty upon any indictment or other prosecution, before any court having competent jurisdiction of the offence, he may plead such acquittal in bar of any subsequent accusation for that same crime.

*Daff*, 317 Md. at 684, 566 A.2d at 123. This Court also has stated

> [i]n determining the disposition of a motion for judgment of acquittal, however, *the trial court is passing upon the sufficiency of the evidence to sustain a conviction*. If the trial judge finds any relevant evidence which is legally sufficient to sustain a conviction, he must deny the motion for judgment of acquittal and allow the evidence to go before the trier of fact.

*Brooks*, 299 Md. at 150-51, 472 A.2d at 983 (emphasis added) (internal citations omitted). Thus, the analysis leading to an acquittal involves weighing the State's evidence in an attempt to determine whether it is sufficient to support a conviction. That is exactly the analysis engaged in by each trial judge in these cases.

*Id*. at 651 (emphasis added)(footnote omitted).

As will be explained more thoroughly *infra*, the major difference between the subject case and the cases decided by the Court in *Taylor*, is that here the judge, prior to granting the motion to dismiss, had no evidence before him. He simply heard argument of counsel. In the cases decided by the *Taylor* Court, evidence was introduced at the hearing, which the motions judges considered. The importance of the fact that the motions judges actually heard evidence was stressed in *Taylor* when Judge Harrell, speaking for the majority, said:

-13-

The District Court judge in *Bledsoe* and the Circuit Court judge in *Taylor*, although inappropriately, underlined: evaluated the sufficiency of the evidence placed before them in granting the motions to dismiss. The stipulation of facts made during Petitioners' motions hearing in *Bledsoe* provided the District Court judge with sufficient evidence to make findings going to the general issue of the case, although he should not have solicited such factual stipulations nor predicated his grant of the motion upon findings based on those facts. In ruling on the motions, he did not hold that the criminal informations had substantial defects on their faces, or defects in the indictment procedure followed by the State. Rather, he held, based on the evidence placed before him by the parties, that the Showcase was not a public place within the meaning of the statute, and that the Ordinance was unconstitutional as applied to the facts. In his oral opinion, the judge explicitly stated that the Showcase "is not of the same kind and character as those [establishments] listed in the statute, *to sustain a criminal prosecution* for violation of the statute." (Emphasis added). After disposing of the statutory interpretation arguments, he acknowledged that "it would be sufficient for this ruling on this case and on the defendant's motion, to stop [the inquiry] at that point." He continued, however, by stating "[b]ut because substantial constitutional issues have been . . . raised in this case, we find it necessary to address those issues as well." He therefore opined that "the [State] had made no showing that first amendment activity could be constitutionally curtailed" in this case.

The explanation of his ruling clearly indicates that he ruled on the general issues of the cases rather than on the legal sufficiency of the criminal informations. By ruling on the merits of the cases to determine that there were no grounds "to sustain a criminal prosecution," the judge in actuality granted acquittals. The judge's determinations were based on the sufficiency of the evidence such that institution of new proceedings would necessitate a second resolution of the facts. This cuts to the very heart of double jeopardy protection.

The Circuit Court judge in *Taylor* also overstepped the limitations of ruling on a motion to dismiss by predicating her conclusion on an analysis of the facts extrinsic to the four corners of the criminal information, as represented in Taylor's Exhibit Number 1. Instead of limiting her consideration to the narrow purview of the criminal information, she granted the motion by deciding the substantive issues of the case. She dismissed the three child pornography charges because she concluded that the facts showed that the e-mail conversations did not violate the statute. She also specifically relied on

-14-

<u>the evidence to dismiss the attempt charges</u>. She dismissed those charges on two grounds: first, the charges alleged a crime involving a minor, but the facts alleged were that an adult was involved rather than a minor and therefore it was impossible as a matter of law for Appellee to commit the offenses charged; and second, Taylor's conduct was mere preparation and did not constitute a substantial step towards the commission of the crime. These findings go to the general issues of the case and not to potential flaws discerned from the fact of the criminal information or its obtention. The judge substantively held that Taylor was not guilty of the crimes charged, and therefore effectively granted a judgment of acquittal.

*Id*. at 652-53 (footnotes omitted) (some emphasis added).

Recently, in *Kendall v. State*, 429 Md. 476, 487 (2012), the Court, in its analysis of *Taylor*, said "[i]n reaching . . . [its conclusion that both of the cases discussed in *Taylor* should be dismissed] the Court relied on the trial courts' explanations of their rulings, noting how they depended on an evaluation of facts bearing on whether the defendants were guilty of the crimes charged."

It is also important to note that in a dissent written by Judge Cathell, and concurred in by Judges Raker and Wilner, the judges made it clear that they read the majority opinion as holding that a motion to dismiss could be treated as a motion for acquittal if, in granting the motion, the judge relied upon evidence that was put before him or her at a hearing. In his dissent, Judge Cathell said:

> From this point on, all a defendant need do is file a motion to dismiss, attach a statement of charges, move an affidavit relating to evidence, or any document with evidentiary matter contained in it into evidence at a pre-trial hearing or file a premature motion for a judgment of acquittal. If that happens the State may be in the unenviable position of having to present facts sufficient to convict, because if it does not do so and the hearing court chooses to require additional factual information, as the trial court did in the case at

bar, and then grants the motion to dismiss based in whole or part on a factual matter, the State will not be able to appeal that decision because of the double jeopardy holding rendered in this case. This is in spite of the provisions granting the State the right to make such an appeal.

\* \* \*

The facts of the present case do not create the problem; the problem is that the majority is re-characterizing a long standing procedure. Nor can the problem merely be pushed aside by a thought that the factual circumstances of the parties can be easily proffered by the parties. With the filing of the majority's opinion, any prosecutor, or defense attorney, who stipulates to the other's evidentiary proffer in a motion to dismiss hearing, runs the risk of being considered incompetent.

*Taylor*, 371 Md. at 655-56 (emphasis added)(footnotes omitted).

In the case at hand, we hold that jeopardy did not attach in the subject case because at the hearing on the motion to dismiss, all the judge heard was oral argument. Appellant therefore was never in jeopardy at any point. Unlike the cases decided in *Taylor*, the motions judge could not have weighed the sufficiency of the evidence because no evidence was before him. For the above reasons, we agree with the State when it argues that its appeal was not barred by principles of double jeopardy.

**III.**

We turn now to the issue raised by the State as to whether the trial judge erred in granting the motion to dismiss.

A motion to dismiss the charges in an indictment or criminal information is not directed to the sufficiency of the evidence, *i.e.*, the quality or quantity of the evidence that the State may produce at trial, but instead tests the legal sufficiency of the indictment on its face. In discussing the function and role of a motion to dismiss in our modern system of criminal justice, this Court

-16-

said:

> In sum, a motion to dismiss the indictment will properly lie
> where there is  some substantial defect on the face of the
> indictment, or in the indictment  procedure, or where there is
> some specific statutory requirement pertaining to the indictment
> procedure which has not been followed.  In the absence of
> statutory authority to the contrary, where the object of appellate
> review of a dismissal is to test a pre-trial ruling of the court
> dealing with the admissibility of evidence, appellate review of
> such pretrial ruling should be denied.  *This is so because the
> motion to dismiss attacks the sufficiency of the indictment, not
> the sufficiency of the evidence*.

*Bailey*, 289 Md. at 150, 422 A.2d at 1025 (emphasis added).

A pretrial motion to dismiss an indictment or information may not be
predicated on insufficiency of the State's evidence because such an analysis
necessarily requires consideration of the general issue.  Thus, where there are
factual issues involved, a motion to dismiss on the grounds that the State's
proof would fail is improper.

*Taylor*, 371 Md. at 645.

The crime of first degree assault is committed if a person "intentionally cause[s] or

attempt[s] to cause serious physical injury to another."  *See* Crim. Law § 3-202.  Under

Crim. Law section 3-206(a), it is very easy to adequately charge first degree assault.  Section

3-206(a) reads:

> *Assault – In general.* – An indictment, information, other charging document,
> or warrant for a crime described in § 3-202 . . . of this subtitle is sufficient if
> it substantially states:
>    "(name of defendant) on (date) in (county) assaulted (name of victim)
> in the . . . . . . . . . degree or (describe other violation) in violation of (section
> violated) against the peace, government, and dignity of the State."

As can be seen (see pages 2 and 3 *supra*), Counts IV and V of the criminal information filed

-17-

in this case fully complied with the requirements of Crim. Law section 3-206(a).

A first degree burglary is, for our purposes, simply breaking and entering the dwelling of another with the intent to commit a crime of violence. To adequately charge someone with first degree burglary, not much has to be alleged. Crim. Law section 6-210(a) and (b) reads:

> (a) *In general*. – An indictment, information, warrant, or other charging document for burglary or another crime under this subtitle is sufficient if it substantially states:
> "(name of defendant) on (date) in (county) did break and enter (describe property) or (describe other crime) in violation of (section violated) against the peace, government, and dignity of the State."
> (b) *Bill of particulars* – If the general form of indictment or information described in subsection (a) of this section is used to charge a crime under this subtitle in a case in the circuit court, the defendant, on timely demand, is entitled to a bill of particulars.
> All essential elements of the crime of burglary were alleged in Count I. *See* page 2

*supra*. First degree assault, which Hallihan was alleged to have committed in Counts IV and V is a "crime of violence." *See* Crim. Law § 14-101(a)(19).

To be guilty of "reckless endangerment," the defendant must engage in conduct that creates a substantial risk of death or serious physical injury to the victim. Crim. Law § 3-204(a)(1).

Crim. Law section 3-206(d) provides:

> (d) *Reckless endangerment.* – (1) To be found guilty of reckless endangerment under § 3-204 of this subtitle, a defendant must be charged specifically with reckless endangerment.
> (2) A charging document for reckless endangerment under § 3-204 of this subtitle is sufficient if it substantially states:
> "(name of defendant) on (date) in (county) committed reckless

endangerment in violation of § 3-204 of the Criminal Law Article against the peace, government, and dignity of the State."

(3) If more than one individual is endangered by the conduct of the defendant, a separate charge may be brought for each individual endangered.

(4) A charging document containing a charge of reckless endangerment under § 3-204 of this subtitle may:

(i) include a count for each individual endangered by the conduct of the defendant; or

(ii) contain a single count based on the conduct of the defendant, regardless of the number of individuals endangered by the conduct of the defendant.

(5) If the general form of charging document described in paragraph (2) of this subsection is used to charge reckless endangerment under § 3-204 of this subtitle in a case in the circuit court, the defendant, on timely demand, is entitled to a bill of particulars.

All essential elements of that charge were alleged in Count VIII (*see* page 3 *supra*).

In his brief, appellee does not even argue that the four counts here at issue (Counts I, IV, V, and VIII) did not adequately charge the crimes mentioned in those counts. And as previously mentioned, in the circuit court, Hallihan's counsel focused not on what the criminal information said, but what defense counsel thought the State could prove if the case were tried. The circuit court argument by Hallihan's counsel was that if the State proved that his client placed the victims in a sleeper hold, or attempted to do so, such actions did not constitute a crime of violence or an attempted crime of violence because (purportedly) sleeper holds do not subject the victim to a risk of death or serious bodily harm. That argument ignored the fact that the criminal information complied with the pleading requirement set forth in the Criminal Law Article. And, as the *Taylor* case made clear, when a motion to dismiss is considered by the circuit court, the judge should concern himself or

herself solely with whether the information or indictment charges a crime; the judge should not consider the issue of whether the State has sufficient evidence to prove that crime. *Taylor*, 371 Md. at 644-45.

For the above reasons, we hold that the circuit court erred in dismissing Counts I, IV, V and VIII.

## IV.
## WAIVER

Hallihan contends that the State waived any argument that it may have had in regard to the propriety, *vel non*, of dismissing Count VIII. In support of his waiver argument, Hallihan states "[a]t no point in the 'Argument' in the Brief of Appellant did Appellant cite to or quote from 'Count Eight' ('RECKLESS ENDANGERMENT'), or otherwise argue that the court below erred in dismissing that particular count." We disagree.

Although the State did not, in its opening brief, quote Count VIII, the State's brief made it clear that it contended that the court erred in dismissing Count VIII. The State said in its opening brief that the motions judge erred by dismissing "some of the counts of the charging document based on whether the State could prove the elements of the offenses charged, when trial had not begun and the court had received no evidence." Read in context, it is clear that "some of the counts" meant all counts that the State did not *nol pros*. We say this because the main argument advanced by the State in its brief, was that under *Taylor*, it was improper for the judge to even consider whether the State's evidence was sufficient to convict, because no evidence was before the circuit court. That argument clearly pertained

-20-

to all counts that the circuit court dismissed.  Moreover, the "fact" section of the State's opening brief listed the charges that the circuit court dismissed and, of course, included Count VIII in that list.  Under these circumstances, we hold that the State did not waive its right to complain about the dismissal of Count VIII.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR WORCESTER COUNTY FOR TRIAL AS TO COUNTS I, IV, V, AND VIII OF THE CRIMINAL INFORMATION; COSTS TO BE PAID BY APPELLEE.**