*State of Maryland v. Karl Smith*, No. 2094, September Term, 2018.  Opinion by
Fader, C.J.

**CRIMINAL PROCEDURE — PLEA AGREEMENTS — MOTIONS FOR
JUDGMENTS OF ACQUITTAL**

A trial court has no authority to grant a motion for judgment of acquittal during a pretrial
hearing convened to decide whether to approve a plea agreement in a criminal case.  If
the court finds that a factual basis for the plea is lacking or otherwise finds the plea
agreement deficient, then its options are as specified in Rules 4-242 and 4-243.

**CRIMINAL PROCEDURE — COMMON LAW — DOUBLE JEOPARDY**

Double jeopardy principles do not bar the State from appealing a nominal judgment of
acquittal when the trial court that entered that judgment was totally without authority to
act.  In substance, such a judgment is a dismissal, not an acquittal.

**CRIMINAL PROCEDURE — APPEALS BY THE STATE — STATUTORY
AUTHORIZATION**

Under § 12-302(c) of the Courts and Judicial Proceedings Article, the State may appeal
from a nominal acquittal that is, in substance, a dismissal and that was entered in
circumstances where the trial court was totally without authority to act.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2094

September Term, 2018

_____

STATE OF MARYLAND

v.

KARL SMITH

_____

Fader, C.J.,
Kehoe,
Berger,

JJ.

_____

Opinion by Fader, C.J.

_____

Filed:  January 30, 2020

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

We must decide whether the State, the appellant here, has the right to seek appellate review of judgments resolving criminal charges in favor of the appellee, Karl Smith. The answer depends on our resolution of interrelated questions: (1) Were the circuit court's judgments, in substance, a dismissal of charges or judgments of acquittal? (2) If judgments of acquittal, did they implicate Maryland's common law double jeopardy protections?[1] and (3) If not, does the State have a statutory right to appeal?

The State charged Mr. Smith with several offenses related to his illegal possession of a firearm and ammunition in his vehicle. The State and Mr. Smith appeared before the Circuit Court for Baltimore City to present a guilty plea agreement for the court's approval. After the circuit court indicated its preliminary acceptance of the guilty plea, the prosecutor recited a statement of facts in support of the plea, to which Mr. Smith agreed. The circuit court then asked whether the State possessed a particular piece of evidence, an operability report for the firearm.[2] When the prosecutor failed to respond, Mr. Smith's counsel

---

[1] As discussed in footnote 10 below, Mr. Smith has premised his challenge only on Maryland's common law protections against double jeopardy, and has not asserted that the Double Jeopardy Clause in the United States Constitution is applicable here.

[2] An "operability report" states whether a gun tested by firearm examiners was found to be operable. *See Powell v. State*, 140 Md. App. 479, 482-84 (2001). The Court of Appeals has assumed, but not decided, that statutes criminalizing the possession of handguns "require[] proof of operability." *Mangum v. State*, 342 Md. 392, 396-97 (1996) (discussing former § 36B(b) of Article 27, the predecessor statute to current § 4-203 of the Criminal Law Article). An operability report is one way, but not the only way, to provide that proof. *Id.* at 398-401. In *Moore v. State*, 424 Md. 118, 141 (2011), the Court of Appeals held that operability is not required to prove a violation of § 5-133 of the Public Safety Article, which prohibits certain categories of individuals from possessing a regulated firearm. The definition of a regulated firearm includes, but is not limited to, a handgun. Md. Code Ann., Pub. Safety § 5-101(r) (2019 Repl.).

"ma[d]e a motion," which the court granted, saying, "Case is dismissed." The docket reflects that the court granted a motion for judgment of acquittal as to all charges.

The State and Mr. Smith disagree regarding whether the court's judgments were a dismissal or an acquittal of the charges. Whichever it was has no effect on the merits of the judgments because, as we will explain, the circuit court had authority neither to acquit Mr. Smith at that time nor to dismiss charges based on the State's inability to present an operability report during a pretrial guilty plea hearing. Whether that order was a dismissal of charges or acquittals does, however, affect whether we may correct the error. That is both because (1) an acquittal based on a review of evidentiary sufficiency potentially implicates Maryland's common law protections against double jeopardy, *see, e.g.*, *Scott v. State*, 454 Md. 146, 152 (2017) ("[T]he State cannot reprosecute a defendant after an acquittal."), and (2) the State has a statutory right to appeal a dismissal of charges under § 12-302(c)(2) of the Courts and Judicial Proceedings Article (2013 Repl.; 2019 Supp.), but no statutory right to appeal from judgments of acquittal.

To characterize properly the circuit court's action, we must examine the Court of Appeals's double jeopardy jurisprudence, particularly regarding the effect of unauthorized acquittals. As we will explain, under *Johnson v. State*, 452 Md. 702, 735 (2017), the circuit court's judgments here do not implicate double jeopardy, both because the judgments were not acquittals in substance and because they were entered at a time when the circuit court was "totally without authority to act." Extending *Johnson*, we hold that a trial court's judgment that functions as a dismissal for double jeopardy purposes also functions as a dismissal for statutory appealability purposes. As a result, we will deny Mr. Smith's

2

motion to dismiss the State's appeal, reverse the circuit court's judgments, and remand for further proceedings.

## BACKGROUND

On June 21, 2018, Mr. Smith appeared before the circuit court facing several charges relating to the possession of a firearm and ammunition. At the beginning of the hearing, Mr. Smith's attorney advised the court that the State had extended a plea deal of "three years, suspend all but time served, and two years probation" in exchange for a guilty plea to one count of wearing, carrying, or transporting a handgun in a vehicle in violation of § 4-203(a)(1)(ii) of the Criminal Law Article (2012 Repl.). After questioning Mr. Smith about his age, education, and ability to read and write, and confirming that he was not under the influence of drugs or alcohol, defense counsel advised Mr. Smith of the rights he would be giving up by choosing to plead guilty, including the right to trial by a court or a jury, the right to call witnesses, the right to cross-examination, the right to remain silent, and full appeal rights. Mr. Smith confirmed that he understood. The circuit court then found that Mr. Smith was "tendering [his] guilty plea freely, knowingly and voluntarily," and stated: "I accept your plea of guilty."

At the court's request, the prosecutor then provided the following statement of facts in support of the guilty plea:

> On April 28, 2018, at approximately 17:29 hours, Officer Kirby and Officer Jordan were in full police uniform, operating an unmarked police vehicle in the 3000 block [of Wylie] Avenue traveling westbound. At that time Officer Kirby observed a black 2001 Acura CL one trip permit tag 318118F traveling eastbound on the 2000 block of the Avenue. The Acura had heavy tint on all the windows including the front windshield. The officers made a u-turn and proceeded toward the Acura to conduct the traffic stop for the same violation.

3

There was heavy traffic at this time and the vehicle immediately pulled to curbside.

The officers activated lights and sirens to conduct a traffic stop and at that time, the driver, later identified as the Defendant, Karl Smith, quickly exited the vehicle and began to walk away. Though officers advised Mr. Smith to re-enter the vehicle multiple times, which he was reluctant to do. Mr. Smith finally entered the vehicle and the officers approached.

Officer Jordan approached the driver's side door, which Mr. Smith left open, and immediately the strong odor of marijuana was coming from inside the vehicle and from Mr. Smith's person. Officer Jordan asked Mr. Smith for his driver's license. Mr. Smith replied that he did not have it on him. Officer Jordan asked Mr. Smith if he had a license, and Mr. Smith responded that he did not have one.

Officer Kirby then responded to the driver's side door with Officer Jordan. Mr. Smith was asked to exit the vehicle. Officer Kirby observed two yellow jugs of green plant residue[/]suspected marijuana in the driver door panel in plain view. Officer Kirby then reached under the seat and immediately felt what he believed to be the barrel of a firearm. Officer Kirby then moved the driver's seat all the way back, at which time Officer Kirby observed a black Smith & Wesson .38 caliber revolver, serial number 224690. At that time Mr. Smith was arrested and advised of his Miranda Rights, to which Mr. Smith responded that yes, he understood his rights.

Officer Kirby recovered the firearm, which was fully loaded with five live .38 caliber rounds with one in the chamber. Officer Kirby immediately rendered the revolver safe. Located in the rear center console of the Acura was a clear ziplock with various means of packaging materials used to package and distribute marijuana. The officers requested a tow truck. [Inaudible] responded to the scene and advised that the Acura belonged to her and that she was Mr. Smith's girlfriend.

All property [was] seized and submitted by Officer Kirby. Officer Kirby contacted the Maryland Gun Center which advised that the firearm was listed as stolen from Baltimore County on April 10, 2018. The firearm was tested by a Fire[arm] Examiner in the Baltimore Police Department's Lab, by Jeremy Lockhart (phonetic) and found to be operable. All events occurred in Baltimore City, Maryland.

After the prosecutor finished reading that statement, the following exchange

occurred:

4

THE COURT: Thank you.

[DEFENSE COUNSEL]: No additions, modifications or deductions.

THE COURT: Do you have an Operability Report?

[DEFENSE COUNSEL]: Your Honor, I make a motion.

THE COURT: Motion is granted. Case is dismissed.

[DEFENSE COUNSEL]: Mr. Smith, you've been acquitted of all the charges. We can file a motion and see if we can have that expunged from your record.

The clerk docketed Mr. Smith's motion as a motion for judgment of acquittal, granted by the circuit court as to all charges. This appeal followed.

## DISCUSSION

Where appealability is at issue, we ordinarily would not begin our analysis with a discussion of the merits of the challenge. Here, however, the merits are inextricably intertwined with the appealability issue itself. In Part I, we review general principles governing guilty plea deals, dismissals, and acquittals in criminal cases. In Part II, we consider Mr. Smith's motion to dismiss, asking separately whether the circuit court's judgments preclude the State's appeal on double jeopardy grounds and whether the State has a statutory right of appeal. In Part III, we return to the merits.

I. **TRIAL COURTS LACK AUTHORITY TO CONSIDER MOTIONS FOR JUDGMENT OF ACQUITTAL DURING PRETRIAL HEARINGS CONCERNING WHETHER TO APPROVE PLEA AGREEMENTS.**

A. **Guilty Pleas and Plea Agreements**

"A guilty plea 'is an admission of conduct that constitutes all the elements of a formal criminal charge.'" *Metheny v. State*, 359 Md. 576, 599 (2000) (quoting *Sutton v. State*, 289 Md. 359, 364 (1981)). "[A] plea of guilty, once accepted, is the equivalent of a

5

conviction. Nothing remains but to give judgment and determine punishment." *Sutton*, 289 Md. at 364. A guilty plea may or may not be entered as part of "a 'plea bargain' or 'plea agreement,'" which "contemplates a conditional plea of guilty or nolo contendere to one or more pending charges, the condition usually being either the dismissal or lessening of other charges by one means or another, or some concession being made with respect to disposition, or both." *Custer v. State*, 86 Md. App. 196, 199 (1991) (quoting *Gray v. State*, 38 Md. App. 343, 356 (1977)); *see also Plea Bargain*, Black's Law Dictionary 1394 (11th ed. 2019) (defining a "plea bargain" as "[a] negotiated agreement between a prosecutor and a criminal defendant whereby the defendant pleads guilty . . . in exchange for some concession by the prosecutor").

Although "it has been possible for an accused criminal to convict himself by acknowledging his crime" since "the earliest days of the common law," guilty pleas and plea agreements remained "extremely uncommon" until after the Civil War. *See* Albert W. Alschuler, *Plea Bargaining and Its History*, 79 Colum. L. Rev. 1, 7-10 (1979). Only in the early twentieth century did plea agreements become the dominant method of resolving criminal cases. *See id.* at 24-32. More than 40 years ago, the Court of Appeals described the then-increasingly important role of plea agreements in our justice system:

> The simple fact is that today plea agreements account for the disposition of an overwhelming percentage of all criminal cases. If this were not so, but rather every case entailed a full-scale trial, state and federal courts would be flooded, and court facilities as well as personnel would have to be multiplied many times over to handle the increased burden. *Santobello v. New York*, 404 U.S. 257, 260 (1971). These agreements, however, also serve other needs besides preventing, or at least relieving, the overcrowding of our courts. As the Supreme Court of the United States noted in *Santobello*, *id.* at 261, the termination of charges after plea negotiations

6

> leads to [the] prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pre-trial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pre-trial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.
>
> Additionally, plea agreements eliminate many of the risks, uncertainties and practical burdens of trial, permit the judiciary and prosecution to concentrate their resources on those cases in which they are most needed, and further law enforcement by permitting the State to exchange leniency for information and assistance. All in all, it is our view that plea bargains, when properly utilized, aid the administration of justice and, within reason, should be encouraged.

*State v. Brockman*, 277 Md. 687, 692-93 (1976) (other internal citations omitted); *see also Dotson v. State*, 321 Md. 515, 518 (1991) (acknowledging recognition by "the appellate courts of this State . . . that plea agreements benefit the courts, the prosecution, the defendant, the victim, and the general public"). In subsequent years, the prevalence of plea agreements has only increased. As of 2018, more than 95 percent of criminal convictions in Maryland were obtained through guilty pleas, including more than 81 percent by plea agreements. *See* Md. State Comm'n on Crim. Sentencing Pol'y, *Annual Report: 2018*, at 45-46 (2019), *available at* http://www.msccsp.org/Files/Reports/ar2018.pdf (last visited Dec. 12, 2019).

A trial court's acceptance of a defendant's guilty plea is governed by Rule 4-242(c), which provides in relevant part:

> The court may not accept a plea of guilty, including a conditional plea of guilty, until[,] after an examination of the defendant on the record in open

7

court conducted by the court, the State's Attorney, the attorney for the defendant, or any combination thereof, the court determines and announces on the record that (1) the defendant is pleading voluntarily, with understanding of the nature of the charge and the consequences of the plea; and (2) there is a factual basis for the plea. . . . The court may accept the plea of guilty even though the defendant does not admit guilt. Upon refusal to accept a plea of guilty, the court shall enter a plea of not guilty.

Plea agreements are governed by Rule 4-243, which authorizes the State and a defendant to enter into, and then submit for court approval, a plea agreement pursuant to which the defendant agrees to enter a plea of guilty or no contest in exchange for the State's agreement to (i) "amend the charging document"; (ii) enter a *nolle prosequi* or a judgment of acquittal as to certain charges; (iii) "not charge the defendant with" additional crimes; (iv) "recommend, not oppose, or make no comment to the court with respect to a particular sentence, disposition, or other judicial action"; or (v) "submit a plea agreement proposing a particular sentence, disposition, or other judicial action to a judge for consideration."[3] Md. Rule 4-243(a)(1)(A)-(F).

Here, the agreement between the State and Mr. Smith fell into the last category, which is further controlled by Rule 4-243(c), which provides:

(1) *Presentation to the Court*. If a plea agreement has been reached pursuant to subsection (a)(1)(F) of this Rule for a plea of guilty or nolo contendere which contemplates a particular sentence, disposition, or other judicial action, the defense counsel and the State's Attorney shall advise the judge of the terms of the agreement when the defendant pleads. The judge may then accept or reject the plea and, if accepted, may approve the agreement or defer

---

[3] A binding plea agreement sometimes is known as an "American Bar Association (ABA) plea agreement," *see* COMAR 14.22.01.02(B)(2), because it is the form of binding agreement authorized by the ABA's Standards for Criminal Justice. *See Sharp v. State*, 446 Md. 669, 698-99 (2016).

decision as to its approval or rejection until after such pre-sentence proceedings and investigation as the judge directs.

(2) *Not Binding on the Court*. The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

(3) *Approval of Plea Agreement*. If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

(4) *Rejection of Plea Agreement*. If the plea agreement is rejected, the judge shall inform the parties of this fact and advise the defendant (A) that the court is not bound by the plea agreement; (B) that the defendant may withdraw the plea; and (C) that if the defendant persists in the plea of guilty, conditional plea of guilty, or a plea of nolo contendere, the sentence or other disposition of the action may be less favorable than the plea agreement. If the defendant persists in the plea, the court may accept the plea of guilty only pursuant to Rule 4-242(c) and the plea of nolo contendere only pursuant to Rule 4-242(e).

(5) *Withdrawal of Plea*. If the defendant withdraws the plea and pleads not guilty, then upon the objection of the defendant or the State made at that time, the judge to whom the agreement was presented may not preside at a subsequent court trial of the defendant on any charges involved in the rejected plea agreement.

Several aspects of the processes outlined in Rules 4-242(c) and 4-243(c) are particularly notable for our analysis. First, a trial court's consideration involves two different decisions: (1) whether to accept or reject the plea; and (2) whether to approve or reject the plea agreement. *See State v. Sanders*, 331 Md. 378, 386 (1993) ("Acceptance or rejection of the plea is a different action, with different consequences than approval or rejection of a plea agreement."). "[T]he two judicial acceptances are intertwined parts of a single unfolding totality . . . ." *State v. Smith*, 230 Md. App. 214, 227 (2016), *aff'd*, 453 Md. 561 (2017). When a court initially accepts a guilty plea that is submitted as part of a

proposed plea agreement, its acceptance is only "conditional." *Id.* Until the court approves the entire bargain, that "anticipatory acceptance of the deal by the judge is not . . . an absolute or binding acceptance." *Id.* To approve a binding agreement, the court "must determine not only that the plea supporting the agreement is knowingly and voluntarily made, and supported by an adequate factual basis"—the criteria for any guilty plea under Rule 4-242(c)—"but also 'whether the agreement is one which punishes the defendant for his act as well as satisfies the public interest that justice be not thwarted.'" *Banks v. State*, 56 Md. App. 38, 53 (1983) (quoting *Blinken v. State*, 291 Md. 297, 308 (1981)).

Second, before a guilty plea may be finally accepted, Rule 4-242(c)(2) requires the court to determine that "there is a factual basis for the plea." *See also State v. Thornton*, 73 Md. App. 247, 252 (1987). That does not mean that the State must prove its case before the court may accept a guilty plea, or that a guilty plea hearing is akin to a trial on a stipulated set of facts.[4] Rather, the factual basis inquiry confirms that the plea is "truly

---

[4] "The plea of not guilty, accompanied by an 'Agreed Statement of Facts,' is a peculiar animal." *Covington v. State*, 282 Md. 540, 541 (1978) (quoting *Covington v. State*, 34 Md. App. 454, 455 (1977)). "Under an agreed statement of facts both [the] State and the defense agree as to the ultimate facts. . . . The trier of fact is not called upon to determine the facts as the agreement is to the truth of the ultimate facts themselves." *Taylor v. State*, 388 Md. 385, 396 (2005) (alteration in *Taylor*) (quoting *Bruno v. State*, 332 Md. 673, 689 (1993)). Nevertheless, "[t]rying a case on an agreed statement of facts ordinarily does not convert a not guilty plea into a guilty plea," *Sutton*, 289 Md. at 366, because it remains "incumbent upon a trial judge to determine whether the agreed facts were legally sufficient to convict of the crime charged," *Covington*, 282 Md. at 542. The agreed statement of facts essentially is an evidentiary device used to "dispense with the calling of witnesses at trial," *Taylor*, 388 Md. at 396, and a defendant who pleads not guilty under such a statement "reserve[s] . . . his entitlement to a review of the sufficiency of the evidence to convict him," *Ingersoll v. State*, 65 Md. App. 753, 762 (1986); *see also Harrison v. State*, 382 Md. 477, 497 (2004) ("[P]rosecutors risk acquittal when a not-guilty agreed statement of facts

10

voluntary," thus safeguarding against the possibility that a defendant "plead[s] . . . without realizing that his conduct does not actually fall within the charge" and "facilitat[ing] [the judge's] determination of a guilty plea's voluntariness . . . in any subsequent post-conviction proceeding." *Thornton*, 73 Md. App. at 254-55 (quoting *McCarthy v. United States*, 394 U.S. 459, 467 (1969)). Accordingly, "[t]he factual basis requirement is inextricably linked to the voluntariness requirement." *Thornton*, 73 Md. App. at 255; *see Metheny*, 359 Md. at 600 ("[T]he factual basis requirement . . . is closely associated with the due process mandate that a defendant enter a guilty plea voluntarily.").

"A trial court has broad discretion as to the sources from which it may obtain the factual basis for the plea." *Metheny*, 359 Md. at 603. One "generally accepted method[] of establishing a factual basis for a guilty plea" is the "prosecutor's testimony," which takes the form "of a summary of the evidence [the prosecutor] expects to present at trial." *Thornton*, 73 Md. App. at 257-58 (quoting John L. Barkai, *Accuracy Inquiry for All Felony and Misdemeanor Pleas*, 126 U. Pa. L. Rev. 88, 121-22 (1977)). The prosecutor must "supply concrete facts rather than merely assert that a factual basis exists," and "the truth of the evidence thus summarized [must] be confirmed by the defendant." *Thornton*, 73 Md. App. at 258 (quoting Barkai, *supra*, at 122). So long as "the conduct which the defendant admits constitutes the offense charged to which he has pleaded guilty," though, the court may rely on the summary confirmed by the defendant to find that a sufficient

---

fails to support the legal theory upon which the State relies."). Conversely, by pleading guilty the defendant "is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime." *Metheny*, 359 Md. at 599 (quoting *United States v. Broce*, 488 U.S. 563, 570 (1989)).

11

factual basis supports the guilty plea. *Thornton*, 73 Md. App. at 255 (quoting *McCall v. State*, 9 Md. App. 191, 199 (1970)). In other words, "when facts are admitted by the defendant and are not in dispute, the judge need only apply the facts to the legal elements of the crime charged to determine if an adequate factual basis exists." *Metheny*, 359 Md. at 603.

Third, the Rules specify the consequences of a court's decision (1) to reject a guilty plea or (2) to reject a plea agreement. If the trial court is not satisfied that a plea is knowingly and voluntarily made or supported by an adequate factual basis, then the court may reject the plea pursuant to Rule 4-242(c) and "enter a plea of not guilty." Md. Rule 4-242(c). If a court that has preliminarily accepted a guilty plea then rejects the plea agreement, it must give the defendant the opportunity to "withdraw the plea." Md. Rule 4-243(c)(4). If the defendant does so, then the parties are returned to their positions before the plea was entered. If the defendant declines to withdraw the plea, however, then "the court may accept the plea of guilty only pursuant to Rule 4-242(c)"—i.e., among other things, the court must determine and announce on the record that the plea is knowing, voluntary, and supported by an adequate factual basis. Md. Rule 4-243(c)(4). The Rules do not contemplate that a trial court's decision to reject a guilty plea or a plea agreement may result in a dismissal of a prosecution or entry of a judgment of acquittal. *See generally* Md. Rules 4-242(c) & 4-243(a), (c).

Notably for our purposes, a "guilty plea [i]s not a trial," and at a hearing where such a plea is entered, "the quantity and quality of the evidence . . . is not an issue." *Yonga v. State*, 221 Md. App. 45, 71-72 (2015) ("*Yonga I*"), *aff'd*, 446 Md. 183 (2016) ("*Yonga II*").

12

The court is not required to "announce findings of fact," *Jones v. State*, 73 Md. App. 267, 271 (1987), nor to find the defendant guilty "beyond a reasonable doubt," *see Metheny*, 359 Md. at 597. Indeed, the defendant may even plead guilty while "maintain[ing] his or her innocence." *Cain v. State*, 386 Md. 320, 326 n.7 (2005) (citing *North Carolina v. Alford*, 400 U.S. 25 (1970)). The issue at a guilty plea hearing is not whether the State has proven its case beyond a reasonable doubt, but whether the defendant's plea is made knowingly, voluntarily, and with the support of an adequate factual basis. *See Yonga I*, 221 Md. App. at 65 ("If a guilty plea is both voluntary and knowing, it will not be invalidated by proof of actual innocence.").[5]

Although, as here, a prosecutor will frequently read a statement of facts in support of the guilty plea, that "minimalist statement of facts . . . is no equivalent of or substitute for an actual trial." *Id.* at 69. To the contrary, by pleading guilty, the "accused waives the right to a jury or court trial," *Sutton*, 289 Md. at 364, and "stipulat[es] that no proof by the prosecution need be advanced," *Metheny*, 359 Md. at 599 (quoting *Boykin v. Alabama*, 395 U.S. 238, 243 n.4 (1969)). Relatedly, the evidentiary posture of a plea hearing is entirely different from a trial. "[A] guilty plea contains none of the facets of a trial, [such as]

---

[5] In *Yonga II*, the Court of Appeals affirmed this Court's decision that a person who has pleaded guilty could not challenge his or her conviction through a petition for a writ of actual innocence, as authorized at that time. *See* 446 Md. at 217. *Yonga II*'s holding was superseded by 2018 Md. Laws ch. 602, *codified at* Md. Code Ann., Crim. Proc. § 8-301(a)(1)(ii) (2018 Repl.; 2019 Supp.), which "expand[ed] eligibility . . . to file a petition for writ of actual innocence" to "include a person convicted as the result of a plea of guilty." Md. Gen. Assembly, Dep't of Legis. Servs., *Fiscal & Policy Note on S.B. 423*, at 1 (May 11, 2018), *available at* http://mgaleg.maryland.gov/2018RS/fnotes/bil_0003/sb0423.pdf (last visited Jan. 29, 2020); *see id.* at 6 (discussing *Yonga II*, 446 Md. 183).

evidence production and credibility determinations . . . . When an individual pleads guilty, credibility determinations are not tested, reliability and validity are not challenged, and relevance is not an issue." *Yonga II*, 446 Md. at 212. As this Court has observed:

> The statement of facts offered in support of the guilty plea is only minimalist. A State's Attorney's Office going before a jury would almost certainly opt for a more maximal case of guilt. We do not know, therefore, what witnesses would have been called or what, under direct and cross-examination, they might have said. We do not know whether the [defendant] would or would not have testified and, if he did testify, how his testimony would have held up. We do not know what [documentary evidence] might have been submitted.

*Yonga I*, 221 Md. App. at 68.

### B. Motions to Dismiss and Motions for Judgment of Acquittal

A criminal defendant may seek to terminate a prosecution by either dismissal or judgment of acquittal. Like Rules 4-242 and 4-243, the rules governing motions for dismissal (Rule 4-252) and motions for judgment of acquittal (Rule 4-324) are specific and comprehensive. Which rule applies depends on the procedural posture of the case and the reasons for terminating the prosecution. We address each in turn.

### i. Motions to Dismiss

A defendant may move for a dismissal of charges under Rule 4-252, which provides in pertinent part:

> (a) *Mandatory Motions*. In the circuit court, the following matters shall be raised by motion in conformity with this Rule and if not so raised are waived unless the court, for good cause shown, orders otherwise:
>
> > (1) A defect in the institution of the prosecution;
>
> > (2) A defect in the charging document other than its failure to show jurisdiction in the court or its failure to charge an offense . . . .

14

. . .

(d) *Other Motions*. A motion asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised and determined at any time. Any other defense, objection, or request capable of determination before trial without trial of the general issue, shall be raised by motion filed at any time before trial.

A criminal defendant may seek a termination of a prosecution before trial only by moving to dismiss the charges under Rule 4-252. *See State v. Taylor*, 371 Md. 617, 644-45 (2002). The defendant need not wait until trial to move to dismiss because the motion "is not directed to the sufficiency of the evidence, *i.e.*, the quality or quantity of the evidence that the State may produce at trial, but instead tests the legal sufficiency of the indictment on its face." *Id.* at 645. Indeed, a defendant generally *must* move to dismiss before trial, unless his or her motion relies on "failure of the charging document to show jurisdiction in the court or to charge an offense," in which case the motion may be made "at any time." *See* Md. Rule 4-252(d).

### ii. *Motions for Judgment of Acquittal*

The timing and grounds for a motion for judgment of acquittal are contained in Rule 4-324, which provides, in pertinent part:

(a) *Generally*. A defendant may move for judgment of acquittal on one or more counts, or on one or more degrees of an offense which by law is divided into degrees, at the close of the evidence offered by the State and, in a jury trial, at the close of all the evidence. . . .

(b) *Action by the Court*. If the court grants a motion for judgment of acquittal or determines on its own motion that a judgment of acquittal should be granted, it shall enter the judgment or direct the clerk to enter the judgment and to note that it has been entered by direction of the court. The court shall specify each count or degree of an offense to which the judgment of acquittal applies.

"Rule 4-324 governs when a defendant may move for a judgment of acquittal during trial and the trial court's procedures in granting or dismissing a defendant's motion, as well as when a judge may acquit a defendant on her own motion." *Johnson*, 452 Md. at 715. That Rule permits such a motion to be made or considered only at two specific times: (1) at the conclusion of the State's evidence or (2) at the close of all the evidence.[6] *Id.* at 715-16.

When a defendant moves for judgment of acquittal, he or she must "argue precisely the ways in which the evidence should be found wanting." *Hobby v. State*, 436 Md. 526, 539 (2014) (quoting *Montgomery v. State*, 206 Md. App. 357, 385 (2012)). And before granting such a motion, the court must determine that "there is no legally sufficient evidence to support a conviction." *Gore v. State*, 309 Md. 203, 214 (1987). Accordingly, a motion for judgment of acquittal made or "heard prior to trial . . . [is] premature" because "no evidence ha[s] been offered." *Wescott v. State*, 11 Md. App. 305, 308 (1971); *see also Polk v. State*, 183 Md. App. 299, 305 n.3 (2008) (disapproving "the use of a motion in limine . . . [as] an assessment, pretrial, of the legal sufficiency of the evidence that the State would produce . . . , a sort of anticipatory motion for a judgment of acquittal"). Until the court sits as a fact-finder and hears evidence, it cannot acquit a defendant "on the ground that the evidence is insufficient." Crim. Proc. § 6-104(a)(1).

---

[6] Essentially the same requirements and timeframes are provided in § 6-104 of the Criminal Procedure Article, which permits a defendant to move for judgment of acquittal: (1) "[a]t the close of the evidence for the State . . . on the ground that the evidence is insufficient in law to sustain a conviction as to the count or degree," *id.* § 6-104(a)(1); and (2) "at the close of all the evidence whether or not a motion for judgment of acquittal was made at the close of the evidence for the State," *id.* § 6-104(b)(1); *see also* Md. Const., Decl. of Rts., art. 23 ("In the trial of all criminal cases, . . . the Court may pass upon the sufficiency of the evidence to sustain a conviction.").

**C. The Maryland Rules Do Not Permit a Defendant to Make, or a Court to Consider, a Motion for Judgment of Acquittal During a Pretrial Guilty Plea Hearing.**

In summary, the Maryland Rules do not authorize a defendant to make, or a trial court to consider, a motion for judgment of acquittal during a pretrial hearing concerning whether a court will accept a guilty plea or approve a plea agreement. That is both because (1) Rule 4-324 does not permit a motion for judgment of acquittal to be made until after the State has presented its evidence at trial, and (2) Rules 4-242 and 4-243 provide opportunities neither for the parties to present evidence at a pretrial guilty plea hearing nor for the court to consider the sufficiency of such evidence.

**II. THE CIRCUIT COURT'S DISMISSAL OF THE CHARGES AGAINST MR. SMITH IS APPEALABLE.**

With that background, we consider Mr. Smith's motion to dismiss, in which he argues that the circuit court's judgments were acquittals from which the State enjoys no right of appeal. The State responds that because the circuit court had no authority to acquit Mr. Smith, it cannot be regarded as having done so. Instead, the State argues, we should treat the court's action as a dismissal, which is both what the court said it was doing and the only means by which it was authorized to terminate the case before trial. The State's appeal actually faces two separate potential hurdles: (1) double jeopardy and (2) statutory jurisdiction. We consider both and conclude that neither precludes the appeal in this case.

**A. Double Jeopardy Does Not Preclude the State's Appeal.**

In arguing that double jeopardy does not bar its appeal, the State relies predominantly on the Court of Appeals's recent decision in *Johnson v. State*, 452 Md. 702

17

(2017). The State contends that *Johnson* stands for the proposition that a "purported acquittal is meaningless" if the court that entered it lacked the authority to do so. Mr. Smith interprets *Johnson* more narrowly, based largely on the fact that *Johnson* "did not overrule" any of the Court's prior decisions, including those in which it held that acquittals that were entered without authority nonetheless implicated jeopardy. We agree that the outcome of this case depends on the proper interpretation of *Johnson* and, in turn, that a proper interpretation of *Johnson* requires an understanding of how the Court there distinguished the case before it from its earlier precedents. We begin with a brief review of the historical development of Maryland's common law protections against double jeopardy.

### i. *Historical Development of Double Jeopardy Protections Under Maryland Common Law*

Maryland is one of only five states that does not have an analogue to the Fifth Amendment's Double Jeopardy Clause in its own constitution, *see Warren v. State*, 226 Md. App. 596, 604 & n.2 (2016), but equivalent protections are "a fundamental part of Maryland common law," *Kendall v. State*, 429 Md. 476, 484-85 (2012). At common law, the prosecution had no right of appeal in criminal cases. *See State v. Manck*, 385 Md. 581, 589-91 & n.5 (2005); *State v. Adams*, 196 Md. 341, 346 (1950). As a result, the prohibition on double jeopardy arose historically as a protection against "the threat of multiple prosecutions, not [against] Government appeals." *United States v. Wilson*, 420 U.S. 332, 342 (1975). By the eighteenth century, three common law writs had developed to prevent the government from placing a person "into jeopardy . . . more than once for the same offence." Jay A. Sigler, *A History of Double Jeopardy*, 7 Am. J. Legal Hist. 283, 295

18

(1963) (quoting 4 Blackstone, *Commentaries on the Laws of England* 335 (1790)).  Those writs were autrefois acquit (former acquittal), autrefois convict (former conviction), and pardon.  *See Taylor*, 371 Md. at 630; *Warren v. State*, 226 Md. App. at 603.  All three operated as "pleas in bar," meaning that they were "interposed in advance of a contemplated subsequent trial for the purpose of foreclosing that trial."  *Copsey v. State*, 67 Md. App. 223, 225 (1986); *accord United States v. Jenkins*, 490 F.2d 868, 871 (2d Cir. 1973), *aff'd*, 420 U.S. 358 (1975), *overruled on other grounds by United States v. Scott*, 437 U.S. 82 (1978).

"The pleas of autrefois convict and pardon provide that a criminal defendant may not be prosecuted twice for the same offense after conviction and may not be punished multiple times for the same offense."  *Taylor*, 371 Md. at 630.  The plea of autrefois acquit, which is most pertinent to this case, provides that "a defendant . . . previously acquitted of an offense . . . [could] not be tried again."  *Scott v. State*, 454 Md. 146, 152 (2017).  Hence, "[t]he successful intersession of the common law plea of autrefois acquit would bar retrial of a defendant after the court ha[d] rendered a judgment of acquittal."  *Giddins v. State*, 393 Md. 1, 15 n.4 (2006).

As the law of double jeopardy evolved, "[t]he principle embodied in the plea of autrefois acquit [was] broadly interpreted."  *Farrell v. State*, 364 Md. 499, 508 (2001) (quoting *Daff v. State*, 317 Md. 678, 684 (1989)).  "[P]rocedural errors [did] not affect the efficacy of [an] acquittal for jeopardy purposes" so long as the "court entering the acquittal . . . [had] basic subject matter jurisdiction."  *Daff*, 317 Md. at 684 (citing, e.g., 2 Hawkins, *Pleas of the Crown* 521 (8th ed. 1824); 2 Hale, *Pleas of the Crown* 247 (1st Am.

19

ed. 1847)). In fact, "[e]ven if the lower court's error was egregious, such as . . . an erroneous determination that the conduct alleged and proved did not constitute a felony, the defendant could plead autrefois acquit to a second indictment." *Jenkins*, 490 F.2d at 870-71.

During the nineteenth century, after the State gained the power to seek review of certain rulings in criminal cases, Maryland's common law of double jeopardy was applied to prosecutorial appeals. As early as 1821, the Court of Appeals "determined that the State could pursue a writ of error where the county court quashed [an] indictment." *See Manck*, 385 Md. at 590 (citing *State v. Buchanan*, 5 H. & J. 317, 329-30 (1821)). But the Court continued to dismiss appeals by the State "after an acquittal of a party upon a regular trial," reasoning that "a settled rule of the common law [was] that . . . the verdict of acquittal can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside and a new trial granted." *State v. Shields*, 49 Md. 301, 303 (1878) (citing, e.g., 2 Hale, *supra*, at 310; 2 Hawkins, *supra*, ch. 47, § 12).

The distinction in Maryland caselaw on which the State's right to appeal depended was drawn neither "between decisions on questions on law and on questions of fact, [n]or [those] on the merits and not on the merits." *Adams*, 196 Md. at 349. Rather, it rested on "the historical distinction between cases reviewable . . . on writ of error and those not so reviewable." *Id.* at 349-50. Thus, under the doctrine of *State v. Buchanan*, the State had a right to seek "review [of] a judgment sustaining a demurrer to an indictment and

20

discharging the defendants."[7]  *Adams*, 196 Md. at 346 (citing *Buchanan*, 5 H. & J. at 329-30, 362-63).  By contrast, the State had no right to appeal an acquittal after a verdict, regardless of whether "such verdict be the result of a misdirection of the judge on a question of law, or of a misconception of fact on the part of the jury."  *Shields*, 49 Md. at 303 (citing, e.g., 2 Hale, *supra*, at 310; 2 Hawkins, *supra*, ch. 47, § 12).

For double jeopardy purposes, the significance of the pre- and post-verdict distinction was that "jeopardy was deemed to attach . . . only when the trial verdict, of conviction or acquittal, was actually rendered."  *Warren*, 226 Md. App. at 605.  Thus, historically, a pretrial (indeed, a pre-verdict) dismissal did not bar reprosecution because the defendant was never put in jeopardy.  Conversely, because jeopardy attached once the jury returned its verdict, the defendant could not be reprosecuted regardless of the reason for the jury's decision.  *See Shields*, 49 Md. at 303.

### ii.    *Double Jeopardy Protections Under Maryland Common Law Since Incorporation.*

Maryland's double jeopardy jurisprudence maintained "that common law logic until" the federal Double Jeopardy Clause was applied to the states in 1969.  *Warren*, 226 Md. App. at 605.  Under the Supreme Court's then-"broader conceptualization of double jeopardy . . . jeopardy attaches in a jury trial at the moment the jury is sworn," and in a

---

[7] Under Rule 4-252, "defenses and objections to an indictment that once were raised by demurrers, motions to quash, pleas in abatement, and certain other pleas, are now raised by motions to dismiss."  *Taylor*, 371 Md. at 644 (quoting *State v. Bailey*, 289 Md. 143, 149 (1980), *superseded on other grounds by* Md. Code Ann., Cts. & Jud. Proc. § 12-302(c)(3) (1982 Repl.), *currently codified at* Md. Code Ann., Cts. & Jud. Proc. § 12-302(c)(4) (2013 Repl.)).

21

non-jury trial when the first witness is sworn. *Id.* at 605-06 & n.4. Following incorporation, Maryland's common law protections against double jeopardy adopted that broader conceptualization, *id.* at 606, and, indeed, have since expanded beyond it to reach certain pretrial determinations.

In *Pugh v. State*, the trial court had presided over a bench trial on drug charges. 271 Md. 701, 703 (1974). At the conclusion of the evidence, the court announced a not guilty verdict that evidently was based on a misunderstanding of the State's theory of prosecution. *Id.* at 704. Once the error became apparent, the court reconsidered and changed its verdict to guilty. *Id.* In discussing the evolution of the double jeopardy doctrine in Maryland, the Court of Appeals acknowledged that, "in certain contexts, the application of the prohibition is difficult and often fraught with disagreement." *Id.* at 705. The circumstances of *Pugh*, however, did not present any such difficulty because, "[f]rom the earliest days, it has been clear that once a verdict of not guilty has been rendered at the conclusion of a criminal trial, that verdict is final and cannot be set aside."[8] *Id.* That is so regardless of "whether the acquittal was based on a mistake of law or a mistake of fact," as long as the trier of fact

---

[8] In support of that proposition, the Court cited its decision in *State v. Shields*, where it had stated:

> It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor, in any form of proceeding, be set aside and a new trial granted, and it matters not whether such verdict be the result of a misdirection of the judge on a question of law, or of a misconception of fact on the part of the jury.

49 Md. 301, 303 (1878).

"intentionally renders a verdict of 'not guilty.'" *Id.* at 705-06.  Once that occurs, "the prohibition against double jeopardy does not permit [the judge] to change his mind." *Id.* at 707.  The Court thus reversed the guilty verdict. *Id.*

Five years later, in *Block v. State*, the Court addressed the implications of a trial court's unauthorized, *post*-trial acquittal of a defendant.  286 Md. 266 (1979).  There, after a trial on the merits, the court initially rendered a verdict of guilty but, in response to a motion for reconsideration filed 11 days later, changed its mind and rendered a verdict of not guilty. *Id.* at 267.  Two months later, "the judge struck his not guilty verdict" and ordered a new trial. *Id.* at 267-68.  Before the Court of Appeals, the State conceded that, under *Pugh*, double jeopardy would bar retrial *if* the trial court had had jurisdiction at the time it entered its acquittal. *Id.* at 269.  The State argued, however, that the court had lacked jurisdiction to act on the motion for reconsideration because the then-applicable rules (1) required that such a motion be filed within three days of the verdict and (2) only authorized the court to award a new trial, not to enter an acquittal. *Id.* at 269-70.

Notably for our purposes, the Court of Appeals assumed, without deciding, that the State was correct that the rules did not authorize the trial court's acquittal. *Id.* at 270.  But the Court held that that error did not equate to a lack of jurisdiction, which, for double jeopardy purposes, "means jurisdiction in the most basic sense.  It does not mean an error in the exercise of jurisdiction permits judicial proceedings to be treated as a nullity." *Id.* Concluding that an unauthorized *exercise* of jurisdiction nonetheless will be given effect for double jeopardy purposes, so long as the court "had subject matter jurisdiction and

23

jurisdiction over the defendant," the Court held that the State was prohibited from retrying Mr. Block.[9]  *Id.* at 273-74.

In *Daff v. State*, 317 Md. 678 (1989), and *Farrell v. State*, 364 Md. 499 (2001), the Court considered appeals in which (1) cases were called for trial, (2) the State failed to call any witnesses, and (3) as a result, the trial courts entered verdicts of not guilty.   In each case, the trial court at least arguably erred in entering verdicts, either because it should have granted a postponement, *Daff*, 317 Md. at 685, or because it may already have done so at the time that it called the case for trial, *Farrell*, 364 Md. at 502 n.1.  Nevertheless, in both cases, the Court concluded that it did not matter whether procedural errors had preceded the acquittals.   Provided that the courts had "basic subject matter jurisdiction, . . . procedural errors will not affect the efficacy of the acquittal for jeopardy purposes." *Daff*, 317 Md. at 684; *Farrell*, 364 Md. at 509 (quoting *Daff*, 317 Md. at 684).

In *State v. Taylor*, the Court of Appeals confronted two consolidated cases in which "a trial judge grant[ed] a pretrial motion to dismiss based on a finding of insufficiency of

---

[9] In *Block*, the Court of Appeals relied on its decision the prior year in *Parojinog v. State*, 282 Md. 256 (1978).  There, the juvenile court had held a hearing in which the sole issue appropriately before it was whether to waive jurisdiction and transfer the case to the circuit court.  *Id.* at 261-62.  Before reaching a decision on that issue, however, the juvenile court imposed penalties that could only have been imposed properly upon finding the defendant guilty.  *Id.* at 258-59.  The juvenile court ultimately waived jurisdiction and transferred the case to circuit court, where the State attempted to prosecute the defendant. *Id.* at 259.  The Court of Appeals held that this new prosecution violated the juvenile's double jeopardy rights.  *Id.* at 265.  Notwithstanding that "the juvenile court erroneously exercised its jurisdiction under the statutory scheme," that court had jurisdiction to act at the time it imposed the penalties.  *Id.* at 261-62, 265.  According to the Court, by "adjudicat[ing] the defendant's guilt" and "enter[ing] dispositional orders"—even though improperly—the juvenile court triggered "the multiple punishment aspect of the double jeopardy prohibition."  *Id.* at 263.

24

evidentiary facts beyond those contained within the 'four corners' of the charging document." 371 Md. at 620. In the first case, *Bledsoe*, during a hearing on a motion to dismiss, the defendants and the State stipulated to certain facts about the underlying conduct, and the State later provided additional documentary evidence. *Id.* at 622-23. The court granted the motion to dismiss "based on the totality of the facts before [it]." *Id.* at 623. In the second case, *Taylor*, also during a hearing on a pretrial motion to dismiss, the defendant introduced into evidence, without objection, a memorandum that summarized the State's evidence, and the parties "proceeded at the motions hearing based on an agreement that [the] memorandum was an accurate and complete summary of the facts underlying the charges in the information." *Id.* at 626. Relying on the facts as stated by the memorandum, the court granted the motion and dismissed all charges. *Id.* at 628.

After a broad review of common law double jeopardy principles,[10] *id.* at 629-36, the Court of Appeals considered the merits of the trial courts' actions. The Court observed

---

[10] The Court of Appeals in *Taylor* rejected the State's suggestion that it should adopt the reasoning of the United States Supreme Court's decision in *Serfass v. United States*, 420 U.S. 377 (1975), applying the Double Jeopardy Clause of the United States Constitution, and instead elected to "decide the cases solely on Maryland common law double jeopardy grounds." *Taylor*, 371 Md. at 643-44. In *Serfass*, the trial court had dismissed the defendant's charges on the basis of "evidentiary facts outside of the indictment," which the defendant contended was "the functional equivalent of an acquittal on the merits." 420 U.S. at 390. The Supreme Court rejected that argument, reasoning that "[a]t no time during or following the hearing on [the defendant]'s motion to dismiss the indictment did the District Court have jurisdiction to do more than grant or deny that motion." *Id.* at 389. The Court determined that "[b]oth the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier 'having jurisdiction to try the question of the guilt or innocence of the accused.'" *Id.* at 391 (quoting *Kepner v. United States*, 195 U.S. 100, 133 (1904)). Because "the District Court was without power to make any determination regarding [the

25

that a motion to dismiss under Rule 4-252 "is not directed to the sufficiency of the evidence,

*i.e.*, the quality or quantity of the evidence that the State may produce at trial, but instead

tests the legal sufficiency of the indictment [or information] on its face." *Id.* at 645. Indeed,

"[a] pretrial motion to dismiss an indictment or information *may not* be predicated on

insufficiency of the State's evidence because such an analysis necessarily requires

consideration of the general issue" of guilt or innocence, which is "improper" at that stage

---

defendant]'s guilt or innocence," 420 U.S. at 389, the Supreme Court held that "jeopardy d[id] not attach, and neither an appeal nor further prosecution constitute[d] double jeopardy," *id.* at 391-92. Before us, Mr. Smith limits his appeal to Maryland's common law protections against double jeopardy, presumably in recognition that, under *Serfass*, jeopardy had not attached for purposes of the federal Double Jeopardy Clause. *See id.*

We note that many of our sister jurisdictions have followed *Serfass*'s "bright-line rule," *see Martinez v. Illinois*, 572 U.S. 833, 839 (2014), in applying their own protections against double jeopardy. *See, e.g.*, *State v. Allen*, 548 S.E.2d 554, 555 (N.C. Ct. App. 2001) ("When . . . a dismissal occurs during the 'pretrial' stage of the proceedings, the defendant has not been 'put to trial before the trier of the facts' and the Double Jeopardy Clause does not prohibit further prosecution." (quoting *Serfass*, 420 U.S. at 394)); *State v. Foley*, 610 N.W.2d 49, 52 (N.D. 2000) ("Double jeopardy does not attach at the preliminary hearing stage because an accused has not yet been put to trial before a trier of fact."); *State v. Larabee*, 632 N.E.2d 511, 513 (Ohio 1994) ("[J]eopardy d[oes] not attach when a trial court grant[s] a pretrial motion to dismiss an indictment after receiving evidence, stipulations and arguments relative to the motion."); *State v. Crawford*, 737 A.2d 366, 368 (Vt. 1999) (indicating that "because jeopardy did not attach to [certain] charges—the dismissal of those charges having occurred before a jury was empaneled—prosecution on [related] charges d[id] not subject defendant to double jeopardy"); *State v. George*, 158 P.3d 1169, 1177 (Wash. 2007) (en banc) (holding that double jeopardy did not bar reprosecution because "dismissal occurred in the context of pretrial proceedings," when "the trial court was without power to find [the defendant] guilty"); *see also, e.g.*, *Tipton v. State*, 959 S.W.2d 39, 40-41 (Ark. 1998); *see also State v. Kasprzyk*, 763 A.2d 655, 667 (Conn. 2001); *People v. Deems*, 410 N.E.2d 8, 10 (Ill. 1980); *State v. Roberts*, 259 P.3d 691, 698 (Kan. 2011); *Commonwealth v. Gonzalez*, 771 N.E.2d 134, 139-41 (Mass. 2002); *Deeds v. State*, 27 So. 3d 1135, 1140 (Miss. 2009); *State v. Pari*, 546 A.2d 175, 179-80 (R.I. 1988).

26

of the proceeding. *Id.* (emphasis added). As a result, "[i]n both *Taylor* and *Bledsoe*, the trial courts erred in granting the motions to dismiss for the evidentiary insufficiency reasons given by the trial judges." *Id.* at 647-48.

That conclusion of error did not, however, end the Court's analysis. "Although cloaked in the form of the grant of motions to dismiss," the Court concluded that "the substance of the trial judges' rulings was to grant judgments of acquittal and so must we treat them for double jeopardy analysis." *Id.* at 648. The Court interpreted *Block* and *Parojinog* to provide that the "substance" of rulings, not their "form," controls how they should be "evaluat[ed] . . . for jeopardy purposes." *Id.* at 649. Examined in that light, the Court held that even though the trial courts erred in "reach[ing] the merits of guilt/innocence," their actions "were tantamount to acquittals of the charges and therefore final dispositions of the respective matters for jeopardy purposes." *Id.* at 650-51. That was so because, in each case, the trial courts actually "weigh[ed] the State's evidence in an attempt to determine whether it [was] sufficient to support a conviction."[11] *Id.* at 651.

Ten years after *Taylor*, the Court of Appeals held that "the principle that the substance of a decision controls for double jeopardy purposes" applies not only to

---

[11] In dissent, Judge Cathell, joined by Judges Wilner and Raker, argued that jeopardy never attached because (among other things) the trial courts had no authority to consider or grant acquittals at the time they ruled; trial had not started; the State had not closed its evidence; and the defendants had not moved for acquittal. *Id.* at 654-58 (Cathell, J., dissenting). The dissenting judges—agreeing with the Supreme Court's jurisprudence regarding the Fifth Amendment's Double Jeopardy Clause, as exemplified by *Serfass*, 420 U.S. at 377—would have held that jeopardy does not attach to a trial court's erroneous consideration of evidentiary sufficiency before a trial on the merits. *Taylor*, 371 Md. at 666-69 (Cathell, J., dissenting).

27

acquittals that are improperly labeled as dismissals, but also to dismissals that are improperly labeled as acquittals. *Kendall v. State*, 429 Md. 476, 480 (2012). There, at the conclusion of the evidence, the defendant moved for judgment of acquittal based on both evidentiary insufficiency and inadequate service of process. *Id.* at 481. Although the trial court granted the motion—and marked "NG," for not guilty, on the docket sheet—as to all of the charges, the record demonstrated that the court had based its judgments with respect to three of the pending charges on the service issue, and not on insufficiency of the evidence. *Id.* at 481-84.

The Court of Appeals observed that, although an intentional rendering of a not guilty verdict is final, *id.* at 485, "further prosecution is not barred" when a court grants a motion that "seeks to have a prosecution terminated without any submission to a judge or jury as to the defendant's guilt or innocence," *id.* at 486. Relying on the United States Supreme Court's decision in *United States v. Martin Linen Supply Co.*, 430 U.S. 564 (1977),[12] the Court of Appeals deemed "[t]he critical question [to be] 'whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" *Kendall*, 429 Md. at 486 (quoting *Martin Linen*, 430 U.S. at 571). Because the judgment in *Kendall* "was based on a purely procedural

---

[12] In *Martin Linen*, the trial court had granted the defendants' motions for acquittal after the jury failed to reach a verdict. 430 U.S. at 565-66. The Supreme Court reasoned that "the District Court . . . evaluated the Government's evidence and determined that it was legally insufficient to sustain a conviction." *Id.* at 572. Such a "determination of insufficiency of the evidence" after a trial, the Court held, constituted "'acquittals' in substance as well as form," which implicated double jeopardy "and thus barred appellate review." *Id.* at 572, 576.

ground having nothing to do with [the defendant]'s guilt or innocence," it was not a resolution of a factual element of the offense charged, and so "the protection against double jeopardy was not triggered." *Id.* at 489. That was true even though the trial court entered the judgment in response to a motion for judgment of acquittal, denoted it on the docket sheet as "NG," and entered it at the conclusion of all of the evidence at a trial on the merits.[13] *See id.* at 488-89, 493. The Court therefore permitted the State to "pursue its appeal" of the trial court's "decision to terminate the prosecution of the three charges." *Id.*

### iii. *Johnson v. State*

In *Johnson v. State*, the case on which the State here relies most heavily, the Court of Appeals again considered the scope of Maryland's common law protections against double jeopardy. 452 Md. 702 (2017). There, after the State twice presented evidence to the jury that it had been ordered to redact, Mr. Johnson moved for a mistrial. *Id.* at 708. The trial court initially delayed ruling on the motion and allowed trial to proceed. *Id.* At the conclusion of the State's case, Mr. Johnson moved for judgment of acquittal. *Id.* The court considered the motion for mistrial first, granted it, and dismissed the jury, all without ruling on the motion for judgment of acquittal. *Id.* at 708-09. The following day, the court scheduled Mr. Johnson's retrial. *Id.* at 710.

---

[13] In dissent, Judge Greene, joined by Chief Judge Bell and Judge Battaglia, argued that "once jeopardy attaches and a verdict of acquittal is rendered intentionally, that verdict is final and may not be set aside." 429 Md. at 493 (Greene, J., dissenting). Because the State had presented its evidence and rested its case, the defendant had moved for a judgment of acquittal, and the trial court had granted that motion, the dissenters would have held that the State was precluded from appealing the trial court's judgment. *Id.* at 494.

Weeks later, Mr. Johnson filed a motion to dismiss the indictment on double jeopardy grounds, asserting, among other things, that "the State's evidence [at the first trial] was legally insufficient to sustain a conviction." *Id.* (quoting Mr. Johnson's argument). After a hearing, the court decided to treat the motion to dismiss as a motion for reconsideration of its rulings at the end of the first trial. *Id.* at 711. The court struck its grant of a mistrial and granted the motion for judgment of acquittal. *Id.*

The State then filed a new indictment on the same charges, which Mr. Johnson moved to dismiss on the ground that his "acquittal barred further proceedings under double jeopardy." *Id.* at 712. The trial court granted the motion and dismissed the new indictment, and the State appealed. *Id.* at 712-13. The Court of Appeals granted certiorari to decide whether "an acquittal entered weeks after a judge declared a mistrial and discharged the jury ha[s] the same effect as an acquittal declared after all the evidence is adduced under Maryland Rule 4-324." *Id.* at 703.

The Court of Appeals began its analysis with an examination of Rule 4-324, which it determined permits consideration of a motion for judgment of acquittal only (1) at the close of the State's evidence or (2) at the close of all the evidence. *Id.* at 715-16. Therefore, "when the trial judge acted outside the strictures of Rule 4-324 in the instant case, he acted without authority." *Id.* at 722.

That was not, however, the end of the inquiry, because Mr. Johnson argued—based on *Taylor*, *Block*, *Daff*, *Parojinog*, and similar cases—"that an acquittal entered by a judge at any time, even though procedurally defective, engages double jeopardy protections." *Id.* at 723. The Court disagreed, concluding that Mr. Johnson's reliance on those cases

30

"misse[d] the mark, because only when the court has the authority to act does an acquittal implicate double jeopardy." *Id.* at 726. In *Johnson*, the court lacked authority to act for two reasons: the trial "judge was without authority to acquit after he failed to adhere to Rule 4-324, *as well as* after having declared a mistrial and discharged the jury." *Id.* (emphasis added). With respect to the first reason, the Court found persuasive federal precedent holding that "[a]cting outside the applicable Federal Rules [governing motions for judgment of acquittal] . . . divest[s] the trial judges . . . of the authority to act." *Id.* at 729. That was also true in *Johnson*, the Court concluded, "because the trial judge acted outside of Rule 4-324, which is not a mere procedural irregularity but a dispossession of authority." *Id.* With respect to the second reason, once the court granted the mistrial and dismissed the jury, that essentially erased the earlier trial, which could therefore no longer support a determination of insufficiency. *Id.* at 731-33.

The Court distinguished *Taylor* and most of the other cases on which Mr. Johnson relied on three grounds. First, "Rule 4-324 was not in play" in those cases. *Id.* at 729. The Court thus placed special significance on the failure to comply with the strictures of Rule 4-324 regarding *when* a motion for judgment of acquittal may be made and considered. Second, "the matter in issue was still pending" when the courts ruled in those earlier cases. *Id.* In *Johnson*, by contrast, although the case against Mr. Johnson was still pending, the motion for judgment of acquittal on which the court purported to rule was not. Third, "various rules, statutes, and precedent permitted the judge's actions" in the earlier cases. *Id.* at 729-30. Notably, the court clearly did not mean that any rules, statutes, or precedent authorized the judges in those earlier cases *to acquit* the defendants. Indeed, as discussed

31

above, the Court of Appeals held in *Taylor*, and assumed in *Block*, that the trial judges had no authority to acquit the defendants in those cases. Instead, and as discussed further below, we understand the Court to mean that "rules, statutes, and precedent permitted" the trial judges in those cases to rule on the issues on which they purported to rule, such as the motions to dismiss in *Taylor*.

The one case that those three factors did not distinguish adequately, and so gave the Court "pause in [its] analytical framework," was *Block*. *Johnson*, 452 Md. at 730. That is because the Court assumed for purposes of its argument that there was no rule, statute, or precedent that authorized the trial court to enter judgment for the defendant based on the motion for reconsideration filed in that case. *Id.* The Court nonetheless distinguished *Block* on two different grounds: (1) the Court's decision in *Kendall* "did not reach the same result as *Block*, although the district court in *Kendall* also had erred in entering a not guilty verdict";[14] and (2) the procedural posture of *Block* was different because the trial judge in *Johnson* "lost his authority to acquit Johnson once he declared the mistrial and discharged the jury." *Id.* at 730-31. In *Johnson*, the Court held, the mistrial terminated the proceedings in favor of the defendant "before any determination of factual guilt or innocence." *Id.* at 731 (quoting *Scott*, 437 U.S. at 94). As a result, it was as though the

---

[14] In *Block*, the trial judge's decision to acquit was based on an assessment of the evidence, and so was treated as an acquittal, whereas in *Kendall* the decision was based on a procedural deficiency, and therefore treated as a dismissal.

first trial had not even occurred at all.[15]  *Id.* at 731-32.  In *Block*, by contrast, the trial had ended, but not been erased from consideration.  *See id.*

The Court concluded its analysis in *Johnson* with a discussion of *State v. Meyer*, 953 S.W.2d 822 (Tex. Ct. App. 1997), a Texas intermediate appellate court decision that the Court of Appeals found "persuasive."  *Johnson*, 452 Md. at 734.  In *Meyer*, a judge had granted an acquittal six months after a trial that had concluded in a mistrial and discharge of the jury.  *See id.*  Although acknowledging that the trial court retained both subject matter jurisdiction and personal jurisdiction over the defendant after the mistrial, the Texas court found that the judge had no authority to acquit, because "[a] court's authority to act is limited to those actions authorized by constitution, statute, or common law."  *Id.* (quoting *Meyer*, 953 S.W.2d at 825).  Because the trial court had no authority to acquit at the time it did, but did have authority to dismiss, the Texas court "conclude[d] that the trial court's judgment [wa]s actually the dismissal of a prosecution."  *Id.*  As a result, the Texas court (1) determined that the State had a right to appeal and (2) having determined that dismissal was inappropriate, reversed the trial court's judgment.  *See Johnson*, 452 Md. at 735 (citing *Meyer*, 953 S.W.2d at 825).

---

[15] With regard to the effect of a mistrial, the Court observed:

> We have noted, in *dicta*, that the grant of a mistrial is "tantamount to a holding that there had been no trial at all," which does not "deny either the accused or the State the opportunity to litigate directly their rights on retrial."  *Cook v. State*, 281 Md. 665, 670–671 (1978); *see also Powers v. State*, 285 Md. 269, 285 (1979) ("a mistrial is equivalent to no trial at all").

*Johnson v. State*, 452 Md. 702, 732 (2017) (quoting *Harrod v. State*, 423 Md. 24, 35 (2011)).

Turning back to Mr. Johnson, the Court of Appeals determined that, because the trial court's judgment of acquittal was entered "in contravention of Rule 4-324 and weeks after [the trial judge] had declared a mistrial and discharged the jury," it was granted "not in the context of a mere procedural irregularity but in the circumstance in which the judge was *totally without authority to act*." *Johnson*, 452 Md. at 735 (emphasis added). For that reason, "double jeopardy principles [were] not implicated," and Mr. Johnson could be retried. *Id.*

> ### iv. *Double Jeopardy Does Not Preclude the State's Appeal Because the Substance of the Court's Action Was a Dismissal.*

Returning to Mr. Smith's case, we conclude that the circuit court's action does not implicate Maryland's common law protections against double jeopardy for two independent reasons: (1) because the circuit court had no evidence before it to consider, the substance of the court's action was a dismissal, not the grant of judgments of acquittal; and (2) under *Johnson*, the circuit court was "totally without authority to act" when it entered judgment for Mr. Smith.

The circuit court's action does not serve as a double jeopardy bar to the State's appeal because it was not, in substance, an acquittal. The record is mixed regarding the circuit court's own view of its action. Although the court itself announced, "Case is dismissed," the action was entered on the docket as the grant of a motion for judgment of acquittal. We need not dwell on that incongruity, however, because it is the substance of the court's action, not the label placed on it, that controls for double jeopardy purposes. *Kendall*, 429 Md. at 479-80.

In determining whether a judgment was a dismissal or acquittal, we must ask "whether the ruling of the judge, whatever its label, actually represent[ed] a resolution, correct or not, of some or all of the factual elements of the offense[s] charged." *Johnson*, 452 Md. at 725 (quoting *Kendall*, 429 Md. at 479 (quoting *Martin Linen*, 430 Md. at 571)). Here, the court's ruling did not—and could not—resolve any factual elements of the offense charged because there were no facts before it to resolve. All that was before the court was the prosecutor's statement identifying the factual basis for Mr. Smith's guilty plea. As discussed above, the purpose of such a statement is to ensure the voluntariness of the plea, not to test the sufficiency of the State's case.[16]

Instead, the circuit court's judgment was premised on the State's *failure* to produce upon demand a particular piece of evidence the court believed the State ultimately would need to prove its case. But there is no requirement that the State bring its trial evidence to, or be prepared to defend the sufficiency of its trial evidence at, *any* pretrial hearing. Under *Taylor*, if the parties nonetheless present evidence for the court's consideration at such a hearing, and the court rules on a motion that is properly before it based on an assessment of that evidence, then the ruling must be treated as an acquittal. But that is not what occurred here. Rather, the court's judgment was premised on its erroneous belief that the

---

[16] Moreover, there is no indication that the trial court's judgments were in fact based on any perceived deficiency in the statement itself, for the court did not find that the statement failed to address any element of the offense. Indeed, to the extent the court appears to have been focused on the operability of the firearm, the statement unambiguously reported that "[t]he firearm was tested by a Fire[arm] Examiner in the Baltimore Police Department's Lab . . . and found to be operable," and Mr. Smith's counsel accepted the statement with "[n]o additions, modifications or deductions."

35

State was required procedurally to produce evidence of a certain type before trial even began. In substance, therefore, that ruling constituted a dismissal of the charges against Mr. Smith, not an acquittal. *See Johnson*, 452 Md. at 734 (discussing with approval the conclusion in *Meyer*, 953 S.W.2d at 825, that because the trial court had no authority to acquit at the time it purported to do so, but did have authority to dismiss, "the trial court's judgment [wa]s actually the dismissal of a prosecution").

Our recent opinion in *State v. Hallihan*, 224 Md. App. 590 (2015), supports our analysis. The State charged Mr. Hallihan with several offenses, including burglary and assault. *Id.* at 592. Before the trial court, Mr. Hallihan moved to dismiss the charges on the basis that they "failed to state an offense." *Id.* at 597 (internal quotation marks omitted). In a bill of particulars, the State alleged that Mr. Hallihan had placed his victim in a "sleeper hold," that in doing so he "intended to cause serious injury or death," and that his doing so caused "actual injury" and "a substantial risk of serious physical injury or death." *Id.* at 595-96. At the hearing on the motion to dismiss, "[a] significant part of the . . . argument concern[ed] the risk to safety to a person who is placed in a 'sleeper hold.'" *Id.* at 597-98. After taking the matter under advisement, the court granted the motion and dismissed the assault counts. *Id.* at 599. The State appealed.

Mr. Hallihan challenged the State's right to appeal, asserting that the motions court's judgment "was substantively a ruling on the sufficiency of the evidence." *Id.* We disagreed. Although the trial court considered the facts as stated in the bill of particulars, and entertained argument as to the factual issue of whether a chokehold could cause risk of serious injury or death, we concluded that "the motions judge could not have weighed

36

the sufficiency of the evidence because no evidence was before him." *Id.* at 607. In contrast to *Taylor*, "[t]here simply was no evidence to evaluate" in *Hallihan* because "the judge, prior to granting the motion to dismiss, had no evidence before him. He simply heard argument of counsel." *Id.* at 599, 604. The State, therefore, could appeal from the dismissal. *Id.* at 607.

Here, as in *Hallihan*, the circuit court "could not have weighed the sufficiency of the evidence because no evidence was before [it]." *See id.* at 607. The judgments were, in substance, a dismissal of the charges, not an acquittal, and double jeopardy principles therefore do not bar the State's appeal.

> ### v. The State's Appeal Also Is Not Precluded by Double Jeopardy Because, Under **Johnson**, the Circuit Court Was "Totally Without Authority to Act."

The second reason the circuit court's action does not bar the State's appeal on double jeopardy grounds is that, under *Johnson*, the circuit court was "totally without authority to act." *See Johnson*, 452 Md. at 735. As noted above, the parties disagree regarding how to interpret *Johnson* in this regard. The State interprets *Johnson* broadly, arguing that it stands for the proposition that a "purported acquittal is meaningless" if it is entered without the authority to acquit. Mr. Smith argues for a narrow interpretation, observing that the Court distinguished, rather than overruled, its prior decisions, and that its holding was premised on its conclusion that "the granting of the motion for mistrial deprived the trial court of fundamental jurisdiction over the defendant's case." 452 Md. at 735.

We do not agree fully with either party's understanding of *Johnson*. Contrary to the State's position, the Court of Appeals did not ultimately base its holding in that case merely

37

on the circuit court's lack of authority to acquit. We acknowledge that the Court's opinion in *Johnson* includes a number of statements that, read in isolation, might suggest that double jeopardy is not implicated by *any* acquittal granted in the absence of the authority to acquit. *See, e.g.*, *id.* at 726 (stating that "only when the court has the authority to act does an acquittal implicate double jeopardy" and the trial "judge was without authority to acquit after he failed to adhere to Rule 4-324"); *id.* at 729 (reasoning that "the trial judge acted outside of Rule 4-324, which is not a mere procedural irregularity but a dispossession of authority"). But the trial courts in *Taylor* and *Block* also lacked authority to acquit, and yet the Court held that double jeopardy was implicated in both cases. *See Taylor*, 371 Md. at 650-51; *Block*, 286 Md. at 270, 273. In *Johnson*, the Court expressly distinguished, and declined to overrule, both of those cases. For us to adopt the State's position here, we would need to interpret *Johnson* as having disavowed cases that it declined to disavow.

And contrary to Mr. Smith's position, the mistrial in *Johnson* did not deprive the trial court of fundamental jurisdiction over the case. Although the mistrial deprived the trial court of authority to rule on the motion for judgment of acquittal, the court maintained both subject matter jurisdiction over the case and personal jurisdiction over Mr. Johnson.

Instead, based on context and the Court of Appeals's reasoning in distinguishing *Johnson* from *Taylor*, we understand "totally without authority to act" to mean that a court lacks authority to take even the action that it purports to take. As discussed above, the trial courts in *Taylor* had authority to rule on the motions to dismiss on which they purported to rule. In *Johnson*, by contrast, the motion properly before the trial court was a motion to dismiss the indictment on double jeopardy grounds. The court clearly had the authority to

38

consider, and grant or deny, *that* motion under Rule 4-252. But unlike in *Taylor*, that was not the motion on which the court purported to act. Instead, the trial court took it upon itself to strike its earlier grant of a mistrial and reconsider a no-longer-extant motion for judgment of acquittal. *Johnson*, 452 Md. at 710-11. Thus, not only did the court lack authority to acquit, it also lacked any statutory, rule-based, or precedential authority to take the action that it purported to take.[17]

As in *Johnson*, the court here was "totally without authority to act." *See* 452 Md. at 735. It was without authority to acquit under Rule 4-324 because trial had not even started, much less proceeded to the conclusion of the State's evidence. That is "not a mere procedural irregularity but a dispossession of authority." *Id.* at 729. And the court was also without authority to dismiss because the only matters before it were Mr. Smith's guilty plea and plea agreement, and the only options available to the court under Rules 4-242(c) and 4-243(c) were to accept or reject the former and approve or reject the latter.

Mr. Smith contends that the mistrial in *Johnson* distinguishes that case from this one. But that ignores the significance of the mistrial in *Johnson*, which mattered because it made the first trial, for double jeopardy purposes, "equivalent to no trial at all." 452 Md.

---

[17] We note, as did the Court in *Johnson*, that this explanation does not quite account for *Block*. There, the Court assumed that the trial court lacked authority to rule on the motion for reconsideration that it purported to grant. *Block*, 286 Md. at 270. Nevertheless, the Court's grounds for distinguishing *Block* in *Johnson* apply equally here: (1) *Block* does not reach the same result as *Kendall*; and (2) Mr. Smith's case is in a different procedural posture. In *Block*, the trial court's ruling was based on the evidence presented during a full trial on the merits. 452 Md. at 730-33. *Johnson* was in a different procedural posture because the mistrial had effectively eradicated the evidence presented in the trial; this case stands in a different procedural posture because no trial ever occurred.

at 732 (quoting *Harrod v. State*, 423 Md. 24, 35 (2011)).  Here, no mistrial was needed to produce that effect because there had been no trial in the first place.  In other words, whereas the mistrial in *Johnson* returned the case to a pretrial stage, the case against Mr. Smith never left the pretrial stage.  Both cases equally were "in the same condition as if no previous trial had been held."  *Id.*

In summary, the court's judgments in favor of Mr. Smith do not implicate double jeopardy concerns, both because (1) in substance, the judgments were a dismissal of charges, not an acquittal; and (2) under *Johnson*, the circuit court was "totally without authority to act."

### B.     The State Has Statutory Jurisdiction to Appeal the Circuit Court's Judgments.

Double jeopardy is not the only potential obstacle to the State's appeal, because that appeal must also be authorized by statute.  In Maryland, "[t]he right to appellate review exists only by statute or rule."  Judge Kevin F. Arthur, *Finality of Judgments and Other Appellate Trigger Issues* 1 (3d ed. 2018).  And because "the State's right to appeal in criminal cases [is] based entirely on statute, . . . [r]estrictions on the State's ability to appeal . . . [are] strictly construed against the State."  *State v. Manck*, 385 Md. 581, 597 (2005).

Any right of the State to appeal in this case must derive from § 12-302(c) of the Courts Article, which grants the State "a limited right to appeal in criminal cases."  *Manck*, 385 Md. at 597.  As relevant here, § 12-302(c)(2) provides the State with a right of "appeal from a final judgment granting a motion to dismiss or quashing or dismissing any indictment, information, presentment, or inquisition."  An acquittal is not among the

40

"actions enumerated in [§ 12-302(c)]," *see Manck*, 385 Md. at 597-98, which comports with "the common law [double jeopardy] prohibition against State appeals from acquittals in criminal cases," *id.* at 592. In his motion to dismiss this appeal, Mr. Smith argues that this Court lacks jurisdiction to hear the State's appeal because the circuit court's ruling constituted a judgment of acquittal, not an order of dismissal.

As we have already concluded, the circuit court's judgments were not an acquittal for double jeopardy purposes. The question we must now confront is whether the judgments may be appealed as "final judgment[s] granting a motion to dismiss" or "dismissing any indictment." Neither party confronts directly this distinction. Instead, both focus almost entirely on double jeopardy cases, apparently accepting that judgments that are treated as an order of dismissal for double jeopardy purposes will be treated the same way for purposes of statutory appealability, and vice versa.

The singular exception is Mr. Smith's reliance on *State v. Stanley*, 34 Md. App. 393 (1977), which he cites for the proposition that the State may not rely on the accidental use of the phrase "case dismissed" to convert what is obviously an acquittal into a dismissal for statutory appealability purposes. In *Stanley*, at the conclusion of a two-day bench trial, the trial judge invited defense counsel to renew a motion for judgment of acquittal. *Id.* at 395-96. When defense counsel did so, the trial judge declared that "[t]here is no question in my mind that under the evidence that is now in front of me, that the State has not made out a case, not even a prima facie case. Therefore, the charges are dismissed against the Defendant." *Id.* at 394. This Court rejected the State's argument that it could appeal the trial court's judgment as a dismissal of the State's case. *Id.* at 395-96. In context, we found

41

"it perfectly clear" that the trial court had "granted the motion for judgment of acquittal and did not . . . dismiss the indictment." *Id.* at 396.  As a result, we held that "the State [could] not, by the use of semantics, successfully disguise an obvious not guilty verdict as a dismissal of an indictment so as to enable the State to appeal." *Id.* at 398.

*Stanley* is inapposite.  There, the State had presented all of its evidence, the defendant had appropriately moved for judgment of acquittal, and the trial court granted the motion after expressly finding the State's evidence wanting.  Here, as discussed, the substance of the decision was a dismissal:  the State had presented none of its evidence, the rules did not authorize a motion for judgment of acquittal, and the circuit court made no findings of fact.  *Stanley* thus supports our view that it is the substance of the judgment that governs its amenability to appeal.

Mr. Smith also contends that the controlling factor for appealability is the circuit court's intention, which, in this case, he asserts was to grant a motion for judgment of acquittal.  He divines that intention from several factors:  (1) the relevant exchange began with the court's request for a particular piece of evidence; (2) defense then "ma[d]e a motion," which is generally understood to refer to a motion for judgment of acquittal; (3) the court granted that motion; (4) although the court then "dismissed" the case, defense counsel responded immediately by telling Mr. Smith that he had been acquitted; and (5) the docket reflects that the court granted a motion for judgment of acquittal.

The State's response to Mr. Smith's argument is two-fold.  First, the State emphasizes that the court said, "Case is dismissed," which indicates that it intended to enter

42

a dismissal. For purposes of this discussion, we will assume, without deciding, that Mr. Smith is correct that the circuit court intended its judgments to be an acquittal.

Second, relying on *Johnson*, the State argues that "even if the court believed that it was entering a judgment of acquittal . . . it could not have because it had no authority to do so." Although *Johnson* resolved this issue for double jeopardy purposes, the issue of statutory appealability was not presented in that case. We nonetheless find *Johnson* persuasive on that question as well. As discussed, it is the substance of a court's action that determines how it is treated for double jeopardy purposes. We see no reason to adopt a different rule for the purpose of determining whether a judgment is properly viewed as a dismissal or an acquittal for statutory appealability purposes. In reasoning that the Court of Appeals found "persuasive," the Texas intermediate appellate court determined that an acquittal entered in circumstances in which a court is without authority to act "is actually the dismissal of a prosecution." *Johnson*, 452 at 734-35 (quoting *Meyer*, 953 S.W.2d at 825). Moreover, based on a review of the legislative history of current § 12-302(c), the Court of Appeals has concluded that the statutory limitations on the State's right of appeal codify "the common law prohibition against State appeals from acquittals in criminal cases." *Manck*, 385 Md. at 592. We thus promote the General Assembly's intent by construing the statute to align with the common law protections against double jeopardy.

Although it did not address expressly the question of statutory appealability, we also find the Court of Appeals's decision in *Kendall* to be instructive. There, "[a]fter the State rested its case, defense counsel made a 'motion for judgment'" premised primarily on the sufficiency of the evidence. 429 Md. at 481. After the District Court granted the motion,

on sufficiency grounds, as to one of the four pending counts, the court proceeded to address the "additional ground" raised in the motion for judgment "that the defendant had not been properly served with the charges." *Id.* The District Court granted the motion on that ground as to the three remaining charges, and the State appealed. *Id.* As discussed above, the Court of Appeals ultimately concluded that the trial court's ruling as to the three charges did not trigger double jeopardy protections because the ruling was based on a procedural issue, and therefore held that "[t]he State may pursue its appeal of that ruling." *Id.* at 493.

For present purposes, we view it as significant that the Court authorized that appeal to proceed where: (1) the underlying judgment was entered in response to the defense's "motion for judgment" at the close of the evidence; (2) the proper characterization of the trial court's ruling on the "motion for judgment" was the subject of the appeal; and (3) neither the Court's majority nor the dissent raised any concerns regarding statutory authorization for the appeal even though the majority, in its opinion, and both parties, in their relatively short briefs, expressly identified the statutory basis for the appeal as § 12-401(b)(1)(ii), which authorizes an appeal, as relevant there, only "from a final judgment entered in the District Court . . . [g]ranting a motion to dismiss, or quashing or dismissing a charging document."[18]

---

[18] In its opinion, after observing that the State had "characterize[ed] the trial court's action as a 'dismissal," when noting its appeal, *Kendall v. State*, 429 Md. 476, 483 (2012), the Court identified in a footnote that "Under CJ § 12-401(b), the State may appeal to the circuit court a final judgment in a criminal case in the District Court 'granting a motion to dismiss, or quashing or dismissing a charging document," *id.* at 483 n.7. This statutory basis was also identified in the parties' briefs. The Petitioner's brief quoted the relevant statutory language verbatim. *See Kendall v. State*, Sept. Term 2011 (Md.), 2012 WL

44

Notably, unlike other issues that are waived if the parties do not raise them, whether an appeal is authorized by statute goes to whether there is subject matter jurisdiction to hear it. Even if the parties do not raise it, "[c]ourts must ensure that subject matter jurisdiction exists over a case at all points of the litigation, and may raise the issue, 'sua sponte, at any time.'" *Pilkington v. Pilkington*, 230 Md. App. 561, 590 n.13 (2016) (quoting *Lewis v. Murshid*, 147 Md. App. 199, 202-03 (1999)); *see also Duffy v. Conaway*, 295 Md. 242, 254 n. 8 (1983) ("Jurisdiction is a matter which, if noticed, will be addressed by a court even though it was not raised by any of the parties."). Thus, even though the defendant in *Kendall* had not formally made a "motion to dismiss," the Court of Appeals implicitly recognized that statutory jurisdiction existed to entertain the State's appeal.

---

2930042, Petitioner's Br. at 5 n.5 (quoting Cts. & Jud. Proc. § 12-401(b)(1)(ii)). The State's brief contended that "the circuit court properly denied Kendal[l]'s motion challenging the State's appeal pursuant to § 12-401(b). Md. Code Ann., Cts & Jud. Proc. Art., § 12-401(b) (2006 Repl. Vol.) (setting forth State's right to appeal, in a District Court criminal case, from a final judgment granting a motion to dismiss)." *Kendall v. State*, Sept. Term 2011 (Md.), 2012 WL 3791646, Respondent's Br. at 7.

We also find notable that the basis for the dissent's disagreement in *Kendall* was focused in large part on the significance of the fact that the judgment was entered as the grant of a motion for judgment of acquittal after all the evidence. *See, e.g.*, 429 Md. at 494 (Greene, J., dissenting) ("The State presented its evidence and rested its case. In response to defense counsel's motion for 'judgment,' the trial judge evaluated the evidence presented and 'grant[ed] the motion.'"); *id.* at 504 ("When a trial judge grants a motion for judgment of acquittal or enters a verdict of acquittal . . . ."), *id.* at 505-06 ("[E]ven if the judge erred in granting the motion, Maryland common law mandates that once jeopardy attaches in a trial, a judgment of acquittal or a verdict of acquittal must stand . . . ."). Notwithstanding that focus, neither the majority nor the dissent identified statutory appealability as an obstacle to the State's appeal that required a different analysis from the double jeopardy analysis.

45

Finally, although it plays no direct role in our decision, we observe that, as a practical matter, a ruling that the State could not appeal in these circumstances would elevate form over substance and, in most cases, merely mandate inefficiency. Here, for example, even if we held that the State were precluded from appealing the circuit court's judgments for want of statutory authorization, the State would not be barred by double jeopardy from reprosecuting Mr. Smith on the same charges. Interpreting the circuit court's judgments as a dismissal of the charges for double jeopardy purposes, but as an acquittal for statutory appealability purposes, thus would result only in additional procedural hurdles and attendant delay in resolving Mr. Smith's case. Neither Maryland common law nor the federal Constitution requires that result. Because this appeal presents no danger of "plac[ing] [Mr. Smith] twice in jeopardy," *see Giddins v. State*, 393 Md. 1, 22 (2006), we do not think that the General Assembly's intent would be served by characterizing the circuit court's action one way for purposes of double jeopardy and another for purposes of § 12-302(c)(2).

We therefore extend the holding in *Johnson*, and hold that a nominal acquittal that is in substance a dismissal and that is entered in a circumstance in which a trial court is "totally without authority to act," is a dismissal for purposes of determining the State's right to appeal under § 12-302(c)(2) of the Courts Article. Accordingly, we will deny Mr. Smith's motion to dismiss the State's appeal.

## III. THE CIRCUIT COURT'S JUDGMENTS OF DISMISSAL WERE ERRONEOUS.

Before returning to the merits of Mr. Smith's appeal, we must address one final procedural argument. Mr. Smith contends that the State waived its right to appeal by

46

(1) failing to argue to the circuit court that the court lacked the authority to dismiss the State's appeal, (2) acquiescing in the circuit court's ruling through its silence, and (3) failing to ask this Court to engage in plain error review. We disagree. The transcript does not reflect that the circuit court gave the State an opportunity to object before dismissing the case. The defense made an oral motion. Without entertaining argument or otherwise giving the State the opportunity to oppose the motion, the court granted it. "If a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection at that time does not constitute a waiver of the objection." *State v. Young*, 462 Md. 159, 168 (2018) (quoting Md. Rule 4-323(c)). And although the State could have sought reconsideration of the circuit court's ruling, it was not obligated to do so to preserve its right to appeal from that adverse ruling.

In any event, under Rule 8-131(a), we have "discretion to consider issues not raised or decided below" when doing so is "necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." The State has informed us that the circumstances presented here are not unique, and at least two other appeals presenting the same issue have been filed with this Court. Even if the State had failed to preserve its arguments, we would therefore exercise our discretion to consider them here.

Having surmounted the last procedural hurdle, we return, anti-climactically, to the merits. We already have indicated that the circuit court's judgments in Mr. Smith's favor were erroneous. Mr. Smith raises two primary contentions to the contrary, neither of which has merit. First, he contends that it is not clear that he, as opposed to his attorney, "intended to, and did, tender an absolute plea of guilty." Even if that is true, that would merely have

47

provided a basis on which the circuit court could have rejected his guilty plea; it would not have permitted the court to dismiss the charges against him.

Second, Mr. Smith contends that the circuit court was obligated to satisfy itself that the plea was supported by an adequate factual basis, and was authorized to reject the plea if it found the factual basis wanting. That certainly is true as a general matter. But the point does not further Mr. Smith's cause, because if the court found the factual basis inadequate, then the proper response would have been to reject the plea, not to dismiss the charges. Md. Rule 4-242(c). Mr. Smith argues that the court no longer had that option because jeopardy attached "when the court signaled its acceptance of the plea." That argument, however, ignores that the court's initial "acceptance" of the plea was merely a "conditional acceptance." *State v. Smith*, 230 Md. App. 214, 227 (2016), *aff'd*, 453 Md. 561 (2017). Until the court had an opportunity to assess the plea's factual basis and determine the appropriateness of the plea bargain, the "anticipatory acceptance of the deal by the judge [was] not . . . an absolute or binding acceptance," and jeopardy had not attached.[19] *Id.*

Third, Mr. Smith argues that we should overlook that the court erroneously granted his motion for judgment of acquittal during a pretrial hearing, because had the court rejected the guilty plea and moved immediately to trial, the State still would not have had an operability report, and a judgment of acquittal would then have been appropriate. Even

---

[19] Mr. Smith's argument also ignores that, as discussed above, the circuit court did not find the statement of the factual basis for the plea inadequate. Instead, the court's judgments were premised on the State's inability to provide the court with a particular piece of evidence at a time when, procedurally, no evidence was required.

if harmless error were to apply to unauthorized pretrial acquittals—and Mr. Smith has not convinced us that it does—we would be loath to assume that the State could not have (1) obtained a postponement to prepare for trial in light of the unexpected demise of the plea agreement, (2) proved its case at trial that day by circumstantial evidence or live witness testimony, or (3) proved its case by retrieving a copy of an operability report that it simply had not expected to need for the guilty plea hearing. We will not engage in speculation about what might have happened if the court had proceeded along an authorized path.

In conclusion, we hold:

1. A purported judgment of acquittal entered by a trial court that is in substance a dismissal or where the court, under *Johnson*, is "totally without authority to act," is a dismissal for purposes of statutory appealability, as it is for common law double jeopardy purposes.

2. When a trial court considers whether to approve a plea agreement before a trial on the merits, the court lacks the authority to acquit the defendant based on a perceived deficiency in the statement of the factual basis for the plea or the State's failure to present any particular piece of evidence in support of the plea. Instead, the court's options if it finds the statement of the factual basis for the plea insufficient or otherwise finds the plea agreement deficient are as specified in Rules 4-242 and 4-243.

3. Here, the circuit court erred by entering judgment in favor of Mr. Smith due to the State's failure to produce an operability report upon demand during a pretrial hearing to consider approval of a plea agreement.

**MOTION TO DISMISS APPEAL DENIED. JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**